Isaac LORA et al., Appellees,

v.

BOARD OF EDUCATION OF the CITY OF NEW YORK et al., Appellants.

No. 620, Docket 79–7521.

United States Court of Appeals, Second Circuit.

Argued March 17, 1980.

Decided June 2, 1980.

Allen G. Schwartz, Corp. Counsel, New York City (L. Kevin Sheridan, Ronald E. Sternberg, Gregg M. Mashberg, New York City, of counsel), for appellants.

Charles Schinitsky, Brooklyn, N. Y. (Legal Aid Society, Juvenile Rights Division; Charles E. Carter, James I. Meyerson, National Association for the Advancement of Colored People, New York City, Henry S. Weintraub, Jane M. Sufian, Brooklyn, N.Y., Lydia Tugendrajch, New York City, of counsel), for appellees.

Drew S. Days, III, Dept. of Justice, Washington, D. C. (Jessica Dunsay Silver, Mildred M. Matesich, Muriel C. Morisey, Washington, D. C., of counsel), for United States as amicus curiae.

Jeanne Silver Frankl, Public Education Association, New York City (Robert S. Peck, New York City, of counsel), and Paula J. Hepner, New York City (Advocates for Children of New York, Inc., Long Island City, N. Y.), for The Public Education Association and Advocates for Children of New York, Inc., amici curiae.

Before MULLIGAN and OAKES, Circuit Judges, and POLLACK, District Judge.*

MILTON POLLACK, District Judge.

In a class suit action against the New York City Board of Education (the "Board") seeking to remedy alleged violations of constitutional and statutory rights, the Board has been ordered to institute sweeping reforms in its programs for the education of emotionally handicapped children. Underlying the order is the District Court's indication that racial discrimination in violation of constitutional mandates as well as violations of the federal statute titled "Education for All Handicapped Children Act of 1975" (the "EHA"), 20 U.S.C. §§ 1401 *et seq.* (1978), mar the present administration for school programs for emotionally handicapped children and require the District Court, in effect, to take judicial control of the formulation and prescription of appropriate educational remedies. For the reasons indicated hereafter it is necessary to remand this case to the District Court for further proceedings.[1]

---

* Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation.

1. The case comes to this Court for review with the following background:

A 22 page opinion on a discovery issue, 74 F.R.D. 565 (E.D.N.Y.1977); a denial by one judge of class-action certification as unnecessary, aff'd 538 F.2d 311 (2d Cir. 1976) (Table), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 589 (1976), only to have class status later certified by another; a denial of a preliminary injunction, aff'd 538 F.2d 311 (2d Cir. 1976) (Table); 16 volumes of trial transcript of 3,672 pages including testimony of approxi-

Defendants-Appellants Board of Education et al. appeal from all but one section of Judge Weinstein's 10-point order below, dated July 2, 1979. The underlying suit was originally commenced on June 11, 1975 by 7 Black and Hispanic New York City Public School students who were assigned to "special day schools" for the education of the socially maladjusted and emotionally disturbed. The original complaint alleged violations of plaintiffs' rights under the Fourth, Eighth, Thirteenth, and Fourteenth Amendments to the Constitution; 42 U.S.C. §§ 1981 and 1983; and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

Shortly before trial began on May 2, 1977, a first amended and supplemental complaint was filed which, *inter alia*, withdrew the claims under the Fourth, Eighth and Thirteenth Amendments. After trial, at the Court's suggestion, a second amended and supplemental complaint was filed to reflect the evidence presented at trial. This complaint included claims under the Education for All Handicapped Children Act of 1975 ("EHA"), 20 U.S.C. § 1401 *et seq.* (1978), and its implementing regulations at 45 C.F.R. § 121a *et seq.* (1977); the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (1978), and its implementing regulations, 45 C.F.R. § 84 et seq. (1977); and the regulations of the Commissioner of Education of the State of New York, 8 N.Y.C.R.R. § 200 *et seq.* (1977).

Appellants resist all but Part III of the order entered below (dealing with individualized education programs and due process documents). We affirm Part III of the order, and vacate and remand the remaining portions of the order for clarification in accordance with this opinion.

 In reaching its conclusions, the District Court applied standards falling short of those announced by the Supreme

Court after the decision was made below, in *Dayton Board of Education v. Brinkman*, 443 U.S. 526, 99 S.Ct. 2971, 2978 n. 9, 61 L.Ed.2d 720 (1979) and *Columbus Board of Education v. Penick*, 443 U.S. 449, 99 S.Ct. 2941, 61 L.Ed.2d 666 (1979) which held that "foreseeable result" is one type of quite relevant evidence of racially discriminatory purpose but, standing alone is not sufficient to establish the requisite discriminatory intent on the part of the Board. Such intent is required, whether the Board's actions are being evaluated under the Equal Protection Clause or under the Civil Rights Act of 1964, Title VI, 42 U.S.C. § 2000d. *See, Board of Education of City School District of New York v. Harris*, 444 U.S. 130, 100 S.Ct. 363, 62 L.Ed.2d 275, *aff'g Board of Education of City School District of New York v. Califano*, 584 F.2d 576 (2d Cir. 1978); *Parent Association of Andrew Jackson High School v. Ambach*, 598 F.2d 705, 715 (2d Cir. 1979); *Harris v. White*, 479 F.Supp. 996, 1002 (D.Mass.1979). The standard of discrimination in Title VI is the same standard the Supreme Court establishes for discrimination under the Fifth and Fourteenth Amendments; "Title VI prohibits only purposeful discrimination." *Board of Education v. Harris, supra*, 100 S.Ct. at p. 379 (Stewart, J., dissenting).[2]

We think it proper for the District Court in the first instance to apply *Brinkman* and *Penick* to the present case, and make a searching inquiry into intent, supported by specific findings. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

The lack of specific findings in the carefully articulated opinion is the second problem which the District Court must remedy.

In an action tried without a jury, Fed.R. Civ.P. 52(a) requires the Court to "find the

mately 50 witnesses over a ten month period; eight volumes of plaintiffs' exhibits (1853 pages); four volumes of defendants' exhibits (841 pages); the District Court Opinion of 85 printed pages reported at 456 F.Supp. 1211 (E.D.N.Y.1978); a 40 page order made one year after publication of the opinion; briefs on appeal by both parties as well as from amici curiae (U.S. Dept. of Justice, Public Education

Association, and Advocates for Children of New York, Inc.). Kafkaesque though it may seem this Court has no alternative but to vacate the order below and remand for clarification.

**2.** For an excellent review of the authorities, *see: Bryan v. Koch*, 492 F.Supp. 212 (S.D. N.Y.1980) (Sofaer, J.).

facts specially and state separately its conclusions of law thereon." Before a school system is put into a judicial receivership there must be some recognizable straightforward finding that plaintiffs have met their burden to show segregated impact and purpose; that the defined action of the school authorities was intended to, and did in fact discriminate against minority pupils. While foreseeable effects are permissible proofs of some of the components on which a decision is reached, discriminatory purpose as a motivating factor must be found to conclude the existence of a constitutional violation. The focus of the inquiry must be whether there was a desire to separate the races among the reasons for the school board's decision and particular course of action. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 273–74, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979).

It is the function of the District Judge to make findings from objective evidence of the presence or absence of discriminatory purpose; inferences from evidence of discriminatory impact will not substitute sufficiently for a finding of actual motivation in concluding that constitutional violation has occurred. The burden of proof remains with the plaintiffs on this issue. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Foreseeability *per se* is insufficient since foreseeability may be helpless and unintentional. It is the trial court's duty to find and present the facts in such a way that an appellate court is not put to the task of sifting through the entire record below in an attempt to determine what facts support what conclusions. *Welsh Co. of California v. Strolee*, 290 F.2d 509, 511 (9th Cir. 1961). As a leading authority on federal practice has put it:

> Ideally findings of fact should be clear, specific, and complete, without non-realistic and uninformative generality on the one hand, and on the other without an unnecessary and unhelpful recital of non-essential details of evidence.

9 Wright & Miller, *Federal Practice and Procedure* § 2579, at 711 (1971). *See also Golf City, Inc. v. Wilson Sporting Goods, Inc.*, 555 F.2d 426 (5th Cir. 1977); *Russo v. Central School District No. 1*, 469 F.2d 623, 628–29 (2d Cir. 1972), *cert. denied* 411 U.S. 932, 93 S.Ct. 1899, 36 L.Ed.2d 391 (1973); *Deal v. Cincinnati Board of Education*, 369 F.2d 55, 64 (6th Cir. 1966), *cert. denied*, 389 U.S. 847, 88 S.Ct. 39, 19 L.Ed.2d 114 (1967) (where the Sixth Circuit remanded in part a school desegregation case because the District Court's conclusion about the racial mix of the schools in Cincinnati was unsupported by subsidiary findings of fact).

The order on review treats together and intermingles relief and directions attributable to constitutional as well as statutory violation. Until the pivotal facts are found specially and using the appropriate standards the appropriate conclusions of law thereon are stated separately, the elimination of sections of the order attributable only to a finding of intentional racial discrimination cannot be addressed properly.

The Court would make one further suggestion. In order to avoid potentially conflicting mandates and in the interests of avoiding waste and duplication, the District Court should consider the feasibility of consolidating the present case with *Jose P. v. Ambach*, 70 Civ. 270 (E.D.N.Y.1979), which, at Judge Nickerson's suggestion, was referred to a Special Master. A final order has now been entered therein and since so many of the same issues are common to both cases, it might be in the interests of judicial husbandry and all concerned—the affected students, the school system, and the Courts—to have the continuing supervision of both cases consolidated and centralized.

Moreover, it may become more apparent whether there is any merit to the contention of the Board that the relief provided in this case is overbroad and inappropriately takes over the management of the school system from the educators.

The judgment below is vacated and the case remanded for further proceedings consistent with the foregoing.

OAKES, Circuit Judge (concurring in part):

I concur in the result and in Judge Pollack's opinion except as it relates to the

252

necessity of finding intent as a prerequisite to a showing of a Title VI violation.

Because of Justice Stewart's views, expressed in his dissent in *Board of Education v. Harris,* 444 U.S. 130, 158, 100 S.Ct. 363, 375, 379, 62 L.Ed.2d 275 (1979), concerning what Justices Brennan, White, Marshall, and Blackmun held or said in *Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1979), and because of the dictum in the majority opinion in *Board of Education v. Harris, supra,* 444 U.S. at 150, 100 S.Ct. at 373–374, I am, of course, tempted to join my colleagues even on the intent issue. However, *Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974), has not been overruled. That case, involving unequal treatment of Chinese-speaking minority students, held that "[d]iscrimination is barred [by an HEW regulation] which has that *effect* even though no purposeful design is present." *Id.* at 568, 94 S.Ct. at 789. Moreover, even assuming that intent is generally required for Title VI violations where a cutoff of all federal funds to an entire school system is involved, *cf. Board of Education v. Harris, supra,* 444 U.S. at 150, 100 S.Ct. at 374 (Congress might wish this "drastic result" only when there is intent), Congress may have intended to give HEW more flexibility in applying less severe sanctions such as a partial cutoff of funds for a particular program.[1]

Be this as it may, until we have further clarification from the Court it will probably in the long run be preferable to obtain more specific findings for purposes of review by our court or the higher one. I say this even though I am fully aware, as I am sure Judge Weinstein was as well, that requiring findings of specific intent to discriminate often puts school boards themselves on the spot, creates unnecessary friction when a given board is prepared to take reasonable steps to eliminate disparate impact or effects upon a given group, and otherwise is a subject that might best be avoided. The state of Supreme Court law on the subject is in flux; the able trial judge can probably, with the tremendous effort he has already put into this and a series of New York school cases, take up the unpleasant task of making his findings more precise with little extra effort. My joining on this issue is thus with reluctance.

---

1. I assume that the City School Board's contract with HEW requires it to abide by all requirements imposed by or pursuant to HEW regulations. *See* 45 C.F.R. § 80.4 (requiring assurances of compliance with nondiscrimination regulations). It is therefore worth remembering that 45 C.F.R. Pt. 80, specifically 45 C.F.R. 80.3(b)(2), provides for a disparate impact test.

It is also worth noting that numerous appropriations of funds for Title VI have presumably occurred since *Lau v. Nichols* was decided in 1974. Congress is well aware—if it does not like HEW administration of a given congres-

sional statute, or a judicial construction of it—of its right to modify that administration or construction either by direct act or by an appropriation act rider. *E. g.,* Departments of Labor and Health, Education and Welfare, Appropriation Act, 1977, Pub.L. No. 94–439, § 208, 90 Stat. 1434 (prohibiting use of funds to require busing under Title VI); *id.* § 209 (the "Hyde Amendment") (prohibiting funding of abortions except in specified circumstances). *See also McRae v. HEW,* 491 F.Supp. 630 (E.D.N.Y.1980), *rev'd,* —— U.S. ——, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) (holding Hyde Amendment unconstitutional).