Geraldine G. CANNON,
Plaintiff-Appellant,

v.

The UNIVERSITY OF CHICAGO et al.,
and Northwestern University et al.,
Defendants-Appellees.

No. 80–1763.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1980.

Decided May 6, 1981.

Rehearing and Rehearing In Banc
Denied June 22, 1981.

John M. Cannon, Chicago, Ill., Jessica Dunsay Silver, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Stuart Bernstein, Mayer, Brown & Platt, James S. Whitehead, Chicago, Ill., for defendants-appellees.

Before PELL, Circuit Judge, SKELTON, Senior Judge,* and WOOD, Circuit Judge.

PELL, Circuit Judge.

Plaintiff-appellant Geraldine G. Cannon comes before this court for a third time in her effort to gain admission to the defendants' medical schools. She was denied admission for the 1975 academic year and has been involved in litigation over the denials at all levels of the federal judiciary since that time. In her complaints, appellant claimed that the defendants' failure to admit her violated the age and sex discrimination prohibitions of the Fourteenth Amendment to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and Illinois law, Ill.Rev.Stat. ch. 48 § 881 *et seq.* The Title IX allegations are the only viable allegations remaining. Initially, the defendants moved to dismiss those allegations pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that no private right of action existed under Title IX. The district court granted these motions, 406 F.Supp. 1257 (N.D.Ill. 1976), and this court affirmed, 559 F.2d

---

* Senior Judge Byron G. Skelton of the United States Court of Claims is sitting by designation.

1063 (7th Cir. 1976). After reviewing the case upon a petition for certiorari, the Supreme Court reversed, holding that a private right of action was implied under Title IX. 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Upon remand to the district court, 605 F.2d 560 (7th Cir.), the defendants filed renewed Rule 12(b)(6) motions to dismiss the complaints, this time on the ground that Title IX prohibits only intentional discrimination and that appellant had failed to allege such purposeful conduct by the defendants in her complaints. Following the denial of appellant's motion for a preliminary injunction which was affirmed by this court, the district court granted defendants' renewed motions to dismiss and denied appellant's cross-motions to strike. Appellant's present appeal is from those orders.

I

The factual background of this case has been set forth in the earlier opinions of the district court and this court. A short repetition, however, may be of some assistance.

The present appellees, Northwestern University Medical School and the Pritzker School of Medicine at The University of Chicago, were two of the ten medical schools to which appellant unsuccessfully applied in 1975. Her undergraduate grade point average (GPA) in science and math related courses was 3.17 of a possible 4.00. The average GPA in these courses of the accepted applicants at the Pritzker School was 3.70 and at least 50% of all applicants to Northwestern had higher GPAs than appellant. On the science portion of the medical college admission test, appellant scored in the lower half of the applicant group to the defendant schools. On the quantitative portion of the test, she scored in the bottom half of the applicants to Northwestern and in the bottom 20% of the applicants to the University of Chicago.

In 1975, only 110 of over 6700 applicants were accepted at Northwestern while only 104 of 5427 applicants were accepted at Chicago. The Dean of the Pritzker School stated in an affidavit that at least 2000 applicants with better academic qualifications than appellant were rejected. At Northwestern, only seven applicants with lower academic qualifications were admitted: five blacks and two women. During the period from 1971 to 1975, 18.1% of the applicants to the Pritzker School were women while 18.3% of the entering classes were women, and 2.2% of all women applicants were admitted while 2.1% of all male applicants were admitted.

Appellant's suits, which were consolidated in the district court's dismissal, are based upon the admission policies of the defendant schools which in 1975 either discouraged individuals over the age of 30 from applying, or, in the case of Northwestern, prohibited the admission of any applicant over the age of 35 who did not possess an advance academic degree. At the time of her application, appellant was 39 years old and had no such degrees. She asserts that because women historically interrupt their higher education to pursue a family and other domestic responsibilities more often than men, these age policies disparately affected women. Appellant claims that the defendants' age policies therefore resulted in sexual discrimination violative of Title IX.[1]

II

Before we proceed to discuss the central issue on this appeal, that is, whether Title IX incorporates an intentional discrimination test or a disparate impact test, we must first address appellant's argument

1. Appellant's argument on this issue is somewhat confused. It is clear from the district court's opinion given orally in court that the primary issue before it was the proper standard to be imposed under Title IX; i. e., whether that statute could be violated by disparate impact alone. In her brief to this court, however, appellant maintains that the district court's holding that the constitutional (intentional) standard applied was "premature" because she "propose[d]" to meet the constitutional standard" in the district court. Only as a secondary argument here does the appellant assert that a disparate impact alone is sufficient to violate Title IX. We shall approach the problem as did the district court and first address whether the intentional-conduct standard applies under Title IX.

that the Supreme Court decided finally the issue before us now in its previous decision in this case. Appellant asserts that because the Court reversed the prior dismissal of her complaints granted on the ground that she failed to state a claim, the Court implicitly found her complaints to be adequate for the purposes of all further Rule 12(b)(6) motions.

This contention may quickly be dismissed. The only issue before the Supreme Court on the prior appeal in this case was whether Title IX implied a private right of action. The Court did not consider any other potential ground for dismissal of appellant's complaints in its opinion. This was made clear in the opinion of Justice Stevens for the Court:

> Accepting the truth of [appellant's] allegations for the purposes of its decision, the Court of Appeals held that petitioner has no right of action against respondents that may be asserted in the federal court. 559 F.2d 1063. We granted certiorari to review that holding. 438 U.S. 914, 98 S.Ct. 3142, 57 L.Ed.2d 1159.

*Cannon v. The University of Chicago*, 441 U.S. 677, 680, 99 S.Ct. 1946, 1949, 60 L.Ed.2d 560 (1980) (footnote omitted). The fact that the Supreme Court and this court assumed *arguendo* the sufficiency otherwise of appellant's complaints for the purposes of the prior appeal does not disallow the appellees' attack on those assumptions here.

## III

Addressing the merits of the district court's opinion, we note that the Supreme Court in *Cannon* indicated that we should look to Title VI for guidance regarding the proper interpretation of Title IX.[2] 441 U.S. at 694–96, 99 S.Ct. at 1956–57. Looking to Title VI, it appears that in the past it has been assumed to apply the disparate impact test. This was the result of the Supreme

Court's action in *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974), upholding certain regulations promulgated by HEW under Title VI. The regulations provided that school systems receiving federal financial assistance "may not ... utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination," or have "the effect of defeating or substantially impairing accomplishment of the objectives of the programs as respects individuals of a particular race, color, or national origin." 414 U.S. at 568, 94 S.Ct. at 789, *quoting* 45 C.F.R. § 80.-3(b)(2). In the opinion by Justice Douglas, the Court noted that the defendant school district had "contractually agreed to 'comply with Title VI of the Civil Rights Act of 1964 ... and all requirements imposed by or pursuant to the Regulation' of HEW (45 C.F.R. Part 80) which are 'issued pursuant to that title ...,'" 414 U.S. at 568–69, 94 S.Ct. at 789, and concluded that "[w]hatever may be the limits of [the Federal Government's power to fix the terms on which its money allotments to the States shall be disbursed] ..., they have not been reached here." *Id.* at 569, 94 S.Ct. at 789 (citations omitted). The Court therefore reversed a court of appeal's holding that no relief was available under the regulations.

The implication in *Lau* that the disparate impact or effects test applied under Title VI became subject to question by the later language in *Board of Regents v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). In that case where the Supreme Court invalidated an affirmative action special admissions program at the University of California Medical School, Justice Powell was of the opinion that Title VI should be held to impose the intentional discrimination standard. After discussing the legislative history of Title VI, he concluded:

---

2. Title VI, 42 U.S.C. § 2000d, provides:

   No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.

Title IX, 20 U.S.C. § 1681, provides in part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any educational program or activity receiving Federal financial assistance.

In view of the clear legislative intent, Title VI must be held to proscribe only those racial classifications that would violate the Equal Protection Clause of the Fifth Amendment.

438 U.S. at 287, 98 S.Ct. at 2746. A violation of the Equal Protection clause had previously been held to require a finding of intentional discrimination; disparate impact alone will not support a cause of action under the Constitution. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 238–48, 96 S.Ct. 2040, 2046–51, 48 L.Ed.2d 597 (1976).

Though the dissenters in *Bakke* felt that the affirmative action program at the University should have been upheld, the opinion by Justice Brennan joined in by Justices White, Marshall and Blackmun concurred in Justice Powell's statement that the constitutional standard applied under Title VI:

We agree with Justice Powell that, as applied to the case before us, Title VI goes no further in prohibiting the use of race than the Equal Protection clause of the Fourteenth Amendment itself.

438 U.S. at 325, 98 S.Ct. at 2766

In our view, Title VI prohibits only the uses of racial criteria that would violate the Fourteenth Amendment if employed by a State or its agencies; ..."

*Id.* at 328, 98 S.Ct. at 2767. The dissenters later expressly questioned the continued viability of the *Lau* implications after the *Bakke* decision:

We recognize that *Lau* when read in light of our subsequent decision in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), which rejected the general proposition that governmental action is unconstitutional solely because it has a racially disproportionate impact, may be read as being predicated upon the view that, at least in some circumstances, Title VI proscribes conduct which might not be prohibited by the Constitution. Since we are now of the opinion, for the reasons set forth above, that Title VI's standard, applicable alike to public and private recipients of federal funds, is no broader than the Constitution's, we have serious doubts concerning the correctness of what appears to be the premise of that decision.

*Id.* 438 U.S. at 352, 98 S.Ct. at 2779.

In a recent Supreme Court opinion, Justice Marshall, joined by Justice Brennan and Justice Blackmun, concurred and expressed similar sentiments:

In *Bakke*, five members of the Court were of the view that the prohibitions of Title VI—which outlaw racial discrimination in any program or activity receiving federal financial assistance—are coexistent with the Equal Protection guarantees of the Fourteenth Amendment.

*Fullilove v. Klutznick*, 448 U.S. 448, 517 n.1, 100 S.Ct. 2758, 2795 n.1, 65 L.Ed.2d 902 (1980). Similarly, in *Board of Education v. Harris*, 444 U.S. 130, 100 S.Ct. 363, 62 L.Ed.2d 275 (1979), the Court clearly indicated that *Lau* is not dispositive of the issue of the standard under Title VI. In that case, the Court held that certain sections of the Emergency School Aid Act (ESAA) incorporated the disparate impact standard for testing illegal racial discrimination. When addressing the Board's argument that because Title VI required intentional discrimination for a violation so should the ESAA, the Court stated:

There is ... no need here for the Court to be concerned with the issue whether Title VI of the Civil Rights Act of 1964 incorporates the constitutional standard. See *University of California Regents v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). Consideration of that issue would be necessary only if there were a positive indication either in Title VI or in ESAA that the two Acts were intended to be coextensive.

*Id.* 444 U.S. at 149, 100 S.Ct. at 374.

\* \* \* \* \* \*

It does make sense to us that Congress might impose a stricter standard under ESAA than under Title VI of the Civil Rights Act of 1964. A violation of Title VI may result in a cutoff of all federal

funds, and it is likely that Congress would wish this drastic result only when the discrimination is intentional. In contrast, only ESAA funds are rendered unavailable when the ESAA violation is found.

*Id.* at 150, 100 S.Ct. at 374.

ESAA was an attempt by Congress to bring about the same remedy without regard to the cause of the problem, while Title VI may have been intended to remedy the problem only when its cause was intentional discrimination.

*Id.* at n.13, 100 S.Ct. at n.13.

The dissent in *Board of Education* by Justice Stewart with Justices Powell and Rehnquist joining, also assumed that the *Lau* implication was not good law on this point. The Justices expressed the opinion that the intent standard should apply alike to the ESAA and Title VI. When addressing the majority's argument that the legislative history of § 703 of the ESAA, the so-called Stennis Amendment, indicated that the section was to impose only the disparate-impact test, Justice Stewart stated:

> My difficulty with this reasoning stems from the fact that the Stennis Amendment is applicable not only to ESAA, but also to Title VI of the Civil Rights Act of 1964, and the latter has been construed to contain not a mere disparate-impact standard, but a standard of intentional discrimination. In *University of California Regents v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750, five members of the Court concluded that Title VI, which prohibits discrimination in federally funded programs, prohibits only discrimination violative of the Fifth Amendment and the Equal Protection Clause of the Fourteenth. *Id.* at 281–287, 98 S.Ct. at 2743–2746 (Powell, J.); *id.* at 325–355, 98 S.Ct. at 2766–2781 (Brennan, J., White, Marshall, and Blackmun, J.J.). Those consti-

tutional provisions, in turn, have been construed to reach only purposeful discrimination. *Dayton Board of Education v. Brinkman,* 433 U.S. 406, 97 S.Ct. 2766, 53 L.Ed.2d 851; *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450; *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597; *Keyes v. School District No. 1, Denver, Colo.,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548. It thus follows from *Bakke* that Title VI prohibits only purposeful discrimination.

*Id.* 444 U.S. at 159–60, 100 S.Ct. at 379–80, *and see id.* at 162, 100 S.Ct. at 380.

It would seem from the above quoted language that seven of the Justices of the Supreme Court support the view that a violation of Title VI requires intentional discrimination.[3] We agree that this is the better view and other courts are in accord. In *Parents Association of Andrew Jackson High School v. Ambach,* 598 F.2d 705 (2d Cir. 1979), for example, the court noted that at least in school discrimination cases, Title VI should be held to impose the intentional discrimination standard. The court distinguished its earlier opinion in *Board of Education of New York City v. Califano,* 584 F.2d 576 (2d Cir. 1978), *affirmed on other grounds,* 444 U.S. 130, 100 S.Ct. 363, 62 L.Ed.2d 275 (1979), where it had held that Title VI was violated by disparate impact alone in an employment discrimination context. The court noted that the earlier opinion had relied upon an analogy to Title VII which had been held to impose the disparate impact test, but decided that in the school case, the proper analogy would be to Title IV which by its terms imposed the higher intentional discrimination standard. 598 F.2d 716, *see* 42 U.S.C. § 2000c–6. The court held, therefore, that the higher standard ought to apply under Title VI in the school discrimination area. In agreement is the detailed opinion in *Bryan v. Koch,* 492 F.Supp. 212, 229–33 (S.D.N.Y.), *affirmed,*

---

**3.** The three Justice plurality opinion in *Fullilove v. Klutznick,* 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980), does not alter this conclusion. In *Fullilove,* the Chief Justice cited *Lau* as an example of a broad interpretation of Congress' power to remedy discrimination.

The citation does not serve as a reaffirmance of the *Lau* implications at issue here especially since Justice Burger's opinion was joined in by Justices Powell and White who expressed the view in *Bakke* that Title VI imposes the intentional discrimination standard.

627 F.2d 612 (2d Cir. 1980), where the court held that the closing of a city hospital must be shown to have been intentionally discriminatory to be a violation of Title VI, *Lora v. Board of Education*, 623 F.2d 248, 250 (2d Cir. 1980), which held that the assignment of handicapped children to special schools must be shown to be intentionally discriminatory to violate Title VI, and *Harris v. White*, 479 F.Supp. 996, 1002 (D.Mass. 1979), which held the intent standard applied to a Title VI challenge to a city's employment practices. *Board of Education* discussed in *Parents' Association* and which relied upon *Lau* in reaching its conclusion that Title VI imposed the disparate impact test in the employment discrimination area, would not seem to aid significantly appellant's position here in light of the Supreme Court's distinguishing Title VI from the ESAA in its affirmance of the case, and the Second Circuit's narrowing of the *Board of Education* holding in *Parents' Association.*

In short, we believe that a majority of the Justices on the Supreme Court as well as other courts that have recently addressed this question in similar circumstances would hold that a violation of Title VI requires an intentional discriminatory act and that disparate impact alone is not sufficient to establish a violation. We shall therefore adopt that standard under Title IX and evaluate appellant's complaint accordingly.

### IV

The complaints appellant filed in these actions contain no express allegations that her applications to the defendants' medical schools were purposefully or intentionally rejected because of her sex. It is clear from the text of her complaints that appellant's cause of action was based solely upon the alleged disparate impact the defendants' age policies had upon women. With regard to the Title IX claims, the complaints allege simply:

A material criterion for defendants' denial of plaintiff's application for admission to the September 1975 entering class

at [the defendants'] Medical School[s] was her age which, in the circumstances of application to medical school, is a criterion disproportionately characteristic of her sex and does not validly predict any lack of success in the education program or activity of the school[s]. This conduct on the part of defendants is in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000c *et seq.*, as amended by Title IX of the Education Amendments of 1972, P.L. 92–318, § 901(a) which provides:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance,"

and the specific regulations promulgated by the Department of Health, Education and Welfare thereunder, 45 C.F.R. § 86.-21(b)(2) which provides:

"A recipient [of Federal financial assistance] shall not administer or operate any test or other criterion for admission which has a disproportionately adverse effect on persons on the basis of sex unless the use of such test or criterion is shown to predict validly success in the education program or activity in question and alternative tests or criterion which do not have such a disproportionately adverse effect are shown to be unavailable."

This claim of disparate impact,[4] even when coupled with the allegations made in appellant's brief to this court that the defendants knew of this impact while enforcing their age policies, is insufficient to establish a violation of Title IX. *Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (" 'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.' ") (citation and footnote omitted); *Lora, supra*, at 250 (". . . 'foreseeable result' . . . standing alone is not sufficient to establish the requisite discriminatory intent . . .," *citing Columbus Board*

---

4. It goes without question, of course, and appellant has not contended otherwise, that the

regulation can not impose a standard broader than that imposed by this statute.

*of Ed. v. Penick*, 443 U.S. 449, 462, 99 S.Ct. 2941, 2949, 61 L.Ed.2d 666 (1979)). An illegal intent to discriminate cannot be posited solely upon a mere failure to equalize an apparent disparate impact.

Nor do we believe that appellant's allegations under her § 1983 claims that defendants acted "arbitrarily and invidiously ... in violation of the Fourteenth Amendment" are sufficient. These claims were dismissed by the district court after its original hearing because of appellant's failure to allege sufficient state action. The dismissal was affirmed by this court and appellant failed to seek review in the Supreme Court. The statements in these claims, therefore, are inapplicable to appellant's separate claims under Title IX. Even if the language were applicable, however, we would still find it inadequate. Notwithstanding the liberal pleading requirements of Fed.R.Civ.P. 9(b), the generic "arbitrary and invidious" language does not incorporate any necessary implication of intentional discrimination, and we agree with the district court that the allegation that the policies were "in violation of the Fourteenth Amendment" is nothing but a legal conclusion. *Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir. 1971). In short, appellant has alleged nothing more than that a facially neutral age policy had a disparate impact upon women due to the domestic role they have traditionally assumed prior to continuing their education. No allegations have been made from which it can be inferred that it was more likely than not that discriminatory considerations were involved in the defendant's actions. *Compare, Daye v. Harris*, (No. 79–2371, D.C.Cir., Jan. 15, 1981). The disparate effect alone, even if established, would not warrant relief under Title IX. The district court therefore was correct in dismissing appellant's complaint for failure to state a claim.

## V

For the reasons stated previously, the district court's dismissal of appellant's complaint is affirmed. In doing so, we express no opinion on the defendants' alternative argument that the record as it presently exists establishes a sufficient legitimate explanation for appellant's rejection to avoid liability even under the disparate impact standard. Although the defendants' argument is persuasive on this issue, we need not now venture into areas the district court found no need to investigate.

AFFIRMED.