**Patricia MABRY, Plaintiff-Appellant,**

**v.**

**The STATE BOARD OF COMMUNITY COLLEGES AND OCCUPATIONAL EDUCATION and Gordon Dickinson, Ross Forney, Angelo Daurio, Dr. Elinor Greenberg, Thomas Grimshaw, Raymond Guerrie, Isaiah Kelley, Jr., Fred Valdez, Sr., Raymond Wilder, all members of the State Board for Community Colleges and Occupational Education, and Thomas Sullivan, President of Trinidad State Junior College, Defendants-Appellees.**

No. 85–1710.

United States Court of Appeals, Tenth Circuit.

March 9, 1987.

Rehearing Denied April 14, 1987.

Larry F. Hobbs (Vonda G. Hall, with him on the briefs), of Hobbs/Bethke & Associates, Denver, Colo., for plaintiff-appellant.

Daniel R. Satriana, Jr., Hall & Evans (Bruce M. Pech, Asst. Atty. Gen., with him on the briefs), of Denver, Colo., for defendants-appellees.

Before McKAY and ANDERSON, Circuit Judges, and JOHNSON, District Judge.*

STEPHEN H. ANDERSON, Circuit Judge.

Plaintiff, Patricia Mabry, appeals from an order of the United States District Court for the District of Colorado, 597 F.Supp. 1235, granting defendants'[1] motion for partial summary judgment and dismissing her claim alleging that her termination of employment constituted sex discrimination in violation of Title IX, 20 U.S.C. §§ 1681–1686 (1982). We affirm.

---

* The Honorable Alan B. Johnson, District Judge, of the United States District Court for the District of Wyoming, sitting by designation.

1. The initial defendants were the State Board of Community Colleges and Occupational Education, the individual members of the State Board, and Thomas Sullivan, President of Trinidad State Junior College. The State Board is a corporate body "responsible for the administration of public post-secondary education at cer-tain institutions in the State of Colorado, including Trinidad." R. Vol. I at 28. As we discuss *infra,* the individual members of the State Board were dismissed and Mabry has not appealed that dismissal. Accordingly, references to defendants in this opinion are to the State Board and Sullivan. However, our analysis in this opinion would apply equally to the other defendants, were they before us.

## BACKGROUND

The district court found and the record reveals the following relevant facts. Mabry was employed as an instructor and a coach in the physical education department at Trinidad State Junior College ("Trinidad") in Trinidad, Colorado from the 1974–75 through 1981–82 academic years. She also taught courses in speech and first aid. R. Vol. I at 116.

In December 1981, Mabry received notice from defendant Thomas Sullivan ("Sullivan"), the President of Trinidad, that she was being terminated because of a "reduction in force" resulting from a decrease in student enrollment at the college. The remaining two members of the physical education department, both male and with greater seniority than Mabry, were retained. At his deposition, Sullivan stated that a factor in his decision to terminate Mabry was that her two male colleagues were married and had children. R. Vol. II at 93–94.

After she received her notice of termination, Mabry requested and received a hearing before Trinidad's Campus Hearing Committee. Mabry exhausted the hearing procedures at Trinidad and all administrative remedies available to her. After receiving a notice of right to sue from the Equal Employment Opportunity Commission, she commenced an action in the district court in Colorado. Mabry alleged that her employment was terminated on the basis of her sex and/or her parental or marital status, in violation of the provisions of Title VII, 42 U.S.C. § 2000e to § 2000e–17 (1982), Title IX, 20 U.S.C. §§ 1681–1686 (1982) and its implementing regulations, and section 1983, 42 U.S.C. § 1983 (1982).[2] She also alleged that she was subjected to sex-based discrimination because of the nature and quality of the facilities at Trinidad. She sought damages, reinstatement with back pay and benefits, and attorneys'

fees and costs pursuant to 42 U.S.C. §§ 1988 and 2000e–5(k) (1982).

In response to defendants' motion for partial summary judgment, the district court dismissed Mabry's Title IX and section 1983 claims on the grounds that the instructional program areas in which Mabry taught were not education programs or activities which receive federal financial assistance within the meaning of Title IX,[3] and that the availability of complete remedial devices under Title IX precluded her remedy under section 1983. The district court also dismissed the individual State Board members on the ground that they were protected by a qualified immunity.

Mabry's Title VII claim was tried to the district court on April 2 and 3, 1985. The district court entered judgment on April 16, 1985, for defendants, finding that Mabry's termination was in accordance with the State Board's policy and the relevant Colorado statutes and "without consideration of the sex of the three physical education instructors involved...." R. Vol. I at 159; Findings of Fact No. 12. The court further concluded that "[i]llicit consideration of plaintiff's sexual identity did not occur and the reasons stated for her termination were not pretextual." *Id.* at 160; Conclusions of Law No. 4. Implicit in that conclusion is the finding that defendants' consideration of Mabry's marital and parental status did not amount, in this case, to sex discrimination. Mabry has limited her appeal in this court to "whether the district court erred in dismissing the plaintiff's Title IX (20 U.S.C. § 1681) claim on defendants' motion for partial summary judgment." Plaintiff-Appellant's Opening Brief at 3.

## DISCUSSION

In this appeal, Mabry argues that the district court erred in dismissing her Title IX claim because she participated in a program that received federal financial assist-

---

2. In her complaint, Mabry specifically alleged that defendants violated Title VII by terminating her on the basis of her sex, that they violated Title IX and its implementing regulations by terminating her on the basis of her parental or marital status and/or her sex, and that they violated section 1983 by violating Title IX and its implementing regulations. Complaint para. 16–18; R. Vol. I at 2–3.

3. 20 U.S.C. § 1681(a) provides, in pertinent part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

ance within the meaning of Title IX. She also argues that the cause of action she asserts under Title IX is not actionable under Title VII because "the courts have held that Title VII rather than proscribing *distinctions* based on marital status, as in the instant case, proscribe [sic] sex discrimination resulting from a situation where an employer has applied a different requirement regarding marital status to females than to males." Plaintiff-Appellant's Reply Brief at 9–10 (emphasis original).[4] We do not reach the question of whether Mabry participated in a Title IX "program," however, because her claim is actionable under Title VII, and the district court's judgment of April 16, 1985, from which Mabry took no appeal, constitutes a final determination of an essential element of her Title IX claim.

## I.

### APPLICATION OF TITLE VII

Mabry argues that her claim of discrimination based on "marital, parental head of household and wage earner status," Plaintiff-Appellant's Reply Brief at 11, is *not* cognizable under Title VII, but *is* under Title IX by virtue of 34 C.F.R. § 106.57 (1986), one of Title IX's implementing regulations. She argues that an EEOC guideline regarding distinctions based on marital status shows that "Title VII does not recognize policies concerning the marital, parental or wage earner status of individuals except where such discrimination varies with the sex of the individual." Plaintiff-Appellant's Reply Brief at 9.[5]

The Title IX regulation on which Mabry relies has two subsections. It provides in pertinent part:

(a) General. A recipient shall not apply any policy or take any employment action:

(1) Concerning the potential marital, parental or family status of an employee or applicant for employment which treats persons differently on the basis of sex; or

---

**4.** Another issue raised in this appeal was whether the existence of a full and complete remedy for Mabry under Title VII preempts her Title IX claim. Because the final determination with respect to Title VII precludes retrying the same issues in Mabry's Title IX claim, we do not reach the preemption issue.

**5.** This guideline is promulgated in 29 C.F.R. § 1604.4(a) (1986) which provides, in pertinent part:

> The Commission has determined that an employer's rule which forbids or restricts the employment of married women and which is not applicable to married men is a discrimination based on sex prohibited by title VII of the Civil Rights Act. It does not seem to us relevant that the rule is not directed against married females, for so long as sex is a factor in the application of the rule, such application involves a discrimination based on sex.

Mabry also cites two cases, *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) and *Stroud v. Delta Airlines, Inc.*, 544 F.2d 892 (5th Cir.), *cert. denied*, 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110 (1977), for her argument that her claimed discrimination on the basis of marital status is not covered under Title VII. *Stroud* is distinguishable from the case at hand because it involved an airline policy forbidding the employment of any married woman as a stewardess. The Fifth Circuit held "that since only women held positions as flight attendants, the no-marriage rule did not discriminate on the basis of sex." *Id.* at 894. Other courts have been more critical of the no-marriage rule, whether or not men are involved in the policy. *See Inda v. United Air Lines, Inc.*, 565 F.2d 554 (9th Cir.1977), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978); *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir.), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

In any event, Mabry's situation here is different. She claims no distinction based on marital status between herself and other women, as in *Stroud;* she claims no discriminatory impact on women as a group. Rather, she argues that the consideration of her marital, parental and head-of-household status resulted in sex discrimination against her. In *Martin Marietta,* a woman challenged defendant Martin Marietta's hiring policy which differentiated between women with pre-school children and men with pre-school children. The Supreme Court simply stated that "[t]he existence of such conflicting family obligations, if demonstrably more relevant to job performance for a woman than for a man, could arguably be a basis for a distinction under § 703(e) [of Title VII which permits employers to hire employees 'on the basis of ... sex' if sex 'is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business.' 42 U.S.C. § 2000e–2(e) (1982) ]." 400 U.S. at 544, 91 S.Ct. at 498. It did not state, as Mabry suggests, that distinctions based on marital status could never be prohibited by Title VII.

(2) Which is based upon whether an employee or applicant for employment is the head of household or principal wage earner in such employee's or applicant's family unit.

34 C.F.R. § 106.57 (1986). If Mabry rests her argument on subsection 1, it provides no different basis for a claim than does Title VII. As Mabry noted, Title VII's implementing regulations show that the statute prohibits policies concerning marital, parental or family status that discriminate based on sex. "[A]n employer's rule which forbids or restricts the employment of married women and which is not applicable to married men is a discrimination based on sex prohibited by Title VII...." 29 C.F.R. § 1604.4(a) (1986); *see also id.* at § 800.149 (1986). Case law further reveals the scope of Title VII. For example, the policy of a religious organization that provided insurance for the "head of the household" was held to violate the statute because the term was interpreted only to mean single persons or married men. *EEOC v. Fremont Christian School,* 609 F.Supp. 344 (1984), *aff'd,* 781 F.2d 1362 (9th Cir.1986). Title VII was also violated when an airline applied its no-marriage rule to female stewardesses, but not to male stewards. *Sprogis v. United Airlines, Inc.,* 444 F.2d 1194 (7th Cir.), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

█ Subsection 1 of the Title IX regulation in question similarly prohibits employment action concerning marital, parental or family status "which treats persons differently *on the basis of sex*" 34 C.F.R. § 106.57(a)(1) (1986) (emphasis added). We cannot see how subsection 1 creates a claim not cognizable under Title VII. Under Title VII or Title IX, the potential marital or family status distinction only violates the statute if its impact is to discriminate on the basis of sex. Thus, a claim pursuant to subsection 1 that is actionable under Title IX would also be actionable under Title VII.

█ Subsection 2, on the other hand, would appear to prohibit employment action based on an individual's status as head of household or principal wage earner, without regard to whether the action treats persons differently on the basis of sex. *Id.* at § 106.57(a)(2). Arguably, this regulation could create a claim under Title IX that is not cognizable under Title VII. That interpretation of subsection 2, however, by omitting any reference to sex discrimination, would extend beyond the prohibitions of Title IX. "The legislative power of the United States is vested in the Congress, and the exercise of quasi-legislative authority by governmental departments and agencies must be rooted in a grant of such power by the Congress and subject to limitations which that body imposes." *Chrysler Corp. v. Brown,* 441 U.S. 281, 302, 99 S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979).

> The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is "the power to adopt regulations to carry into effect the will of Congress as expressed by the statute." *Dixon v. United States,* 381 U.S. 68, 74 [85 S.Ct. 1301, 1305, 14 L.Ed.2d 223] (1965), quoting *Manhattan General Equipment Co. v. Commissioner,* 297 U.S. 129, 134 [56 S.Ct. 397, 399, 80 L.Ed. 528] (1936).

*Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213–14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976); *see also Pacific Gas & Elec. Co. v. United States,* 664 F.2d 1133 (9th Cir.1981). To be valid, a regulation, such as subsection 2 of 34 C.F.R. § 106.57(a), must be "'reasonably related to the purpose of the enabling legislation.'" *Guardians Ass'n v. Civil Serv. Comm'n.,* 463 U.S. 582, 643, 103 S.Ct. 3221, 3254, 77 L.Ed.2d 866 (1983) (Stevens, J., dissenting) (quoting *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318 (1973)). "It goes without question, of course, ... that the regulation cannot impose a standard broader than that imposed by this statute [Title IX]." *Cannon v. University of Chicago,* 648 F.2d 1104, 1109 n. 4 (7th Cir.), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981). Title IX prohibits discrimination on the basis of sex. The regulation at issue

cannot, therefore, prohibit conduct which does not result in sex discrimination. Thus, Mabry cannot rely on her interpretation of subsection 2, because that interpretation imposes a standard broader than that imposed by Title IX.

## II.

### PRECLUSION OF TITLE IX CLAIM

■ Because she cannot rely on subsection 2 for her Title IX action, Mabry's only claim is that Trinidad's consideration of her marital, parental and head of household status resulted in sex discrimination against her. We are compelled to affirm the district court decision because fundamental preclusion principles bar Mabry's Title IX claim where the district court found no sex discrimination under her Title VII claim.

Issue preclusion or estoppel prevents the inconsistent determination of the same issues. Estoppel comes into play when an issue involved in a prior decision is the same issue involved in a subsequent action; the issue is actually decided in the first action after a full and fair opportunity for litigation; it was necessary to decide the issue in disposing of the first action; the later litigation is between the same parties; and the role of the issue in the second action was foreseeable in the first action. 18 Wright and Miller, *Federal Practice and Procedure*, § 4416 at pp. 137–38 (West 1981). When these conditions are met, issue preclusion is required. Issue preclusion not only promotes judicial efficiency and repose but also prevents the embarrassment resulting from inconsistent determinations of the same question. *Heyman v. Kline*,

456 F.2d 123, 130–31 (2d Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972).

*Butler v. Pollard*, 800 F.2d 223, 224–25 (10th Cir.1986). In *Butler*, the plaintiffs brought an action seeking legal and injunctive relief on the ground that a ditch across their land which drained defendants' land constituted a trespass. Trial was bifurcated; the jury found for the defendants on the issue of damages. The district court subsequently determined that it was not bound by the jury's verdict and issued an injunction in favor of the plaintiffs. We reversed and remanded, finding that the district court erroneously denied preclusive effect to the earlier jury findings on the issue of the existence of a trespass. Similarly, in this case the district court would be bound by its earlier finding of no sex discrimination under Title VII in Mabry's termination, assuming the same legal standard applies to sex discrimination under Titles VII and IX. For the following reasons, we find the standard to be the same. Mabry's Title IX claim is therefore barred.

Both Title VII and Title IX prohibit discrimination on the basis of sex. Title VII explicitly covers employment-related discrimination; Title IX has also been held to cover such discrimination. *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). We note that the majority of cases interpreting Title IX have involved the meaning of "federal financial assistance" or "program or activity" under the statute. Few cases to date have considered the substantive standard to be applied under Title IX. We find no persuasive reason not to apply Title VII's substantive standards regarding sex discrimination to Title IX suits.[6] *See* A. Lar-

---

**6.** While we note that Title IX is patterned after Title VI, *Cannon v. University of Chicago*, 441 U.S. 677, 695–96, 99 S.Ct. 1946, 1957, 60 L.Ed.2d 560 (1979), analogies to Title VI should be made carefully. *See North Haven*, 456 U.S. at 529, 102 S.Ct. at 1922. Because Title VII prohibits the identical conduct prohibited by Title IX, i.e., sex discrimination, we regard it as the most appropriate analogue when defining Title IX's substantive standards, including the question of whether "disparate impact" is sufficient to establish discrimination under Title IX. It is well settled that Title VII does not require proof of

explicit or overt discrimination. *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Facially neutral employment practices may still violate Title VII if they operate in fact to disproportionately exclude women from employment. It has been an open question whether such "disparate impact" is prohibited by Title IX. In *Cannon v. University of Chicago*, 648 F.2d 1104, 1109 (7th Cir.), *cert. denied*, 454 U.S. 1128, 102

son & L. Larson, *Employment Discrimination,* Vol. I § 7.45(b) (1985).

The EEOC regulations entitled "Procedures for Complaints of Employment Discrimination Filed Against Recipients of Federal Financial Assistance," 28 C.F.R. Part 42, Subpart H (1986), direct agencies to "consider Title VII case law and EEOC Guidelines, 29 C.F.R. Parts 1605–1607, unless inapplicable, in determining whether a recipient of Federal financial assistance has engaged in an unlawful employment practice." 28 C.F.R. § 42.604 (1986). In addition, there is some similarity between the language used in portions of the two titles. Title IX provides that no educational institution shall be required:

> to grant preferential or disparate treatment to the members of one sex on account of an imbalance which may exist with respect to the total number or percentage of persons of that sex participating in or receiving the benefits of any federally supported program or activity, in comparison with the total number or percentage of persons of that sex in any community.

20 U.S.C. § 1681(b). This language is similar to Title VII, which provides that no employer or other entity shall be required:

> to grant preferential treatment to any individual or to any group because of the race, color, religion, sex, or national origin of such individual or group on account of an imbalance which may exist with respect to the total number or per-

centage of persons of any race, color, religion, sex, or national origin employed by any employer, ... in comparison with the total number or percentage of persons of such race, color, religion, sex, or national origin in any community....

42 U.S.C. § 2000e–2(j).

There is a well-developed body of case law concerning employment-related sex discrimination under Title VII; courts should turn to that case law for guidance if confronted with an employment-related allegation of discrimination under Title IX. We find no persuasive reason to have two separate substantive standards concerning sex discrimination in employment, to both of which recipients of federal financial assistance under Title IX must adhere in their employment practices. A few courts have so held already, either explicitly or implicitly. *See O'Connor v. Peru State College,* 781 F.2d 632, 642 n. 8 (8th Cir.1986) ("O'Connor recognizes that, to the degree she relies upon teaching conditions, such as course assignments, her Title IX claim merely duplicates her Title VII claim, and we are bound by the decision thereon in favor of Peru State."); *Nagel v. Avon Bd. of Educ.,* 575 F.Supp. 105, 106 (D.Conn. 1983). *See also General Electric Co. v. Gilbert,* 429 U.S. 125, 133, 97 S.Ct. 401, 406, 50 L.Ed.2d 343 (1976). Indeed, Mabry's counsel, in closing argument to the district court in Mabry's Title VII action, argued that Titles VII and IX share substantive standards.[7]

S.Ct. 981, 71 L.Ed.2d 117 (1981), *cert. denied,* 460 U.S. 1013, 103 S.Ct. 1254, 75 L.Ed.2d 482 (1983), the Seventh Circuit held that Title IX required proof of discriminatory intent "and that disparate impact alone is not sufficient to establish a violation." We are aware of no Supreme Court or other circuit court decisions which have explicitly decided this issue, although in *Guardians Ass'n v. Civil Serv. Comm'n.,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), a bare majority of the Supreme Court upheld the validity of Title VI regulations incorporating a disparate impact standard. The Department of Education's regulations implementing Title IX prohibit some facially neutral policies. *See, e.g.,* 34 C.F.R. §§ 106.21(b)(2), 106.21(c)(2)–(3), 106.22, 106.-23(b), 106.34(d), 106.37(a)(2), 106.38(a)(2), 106.-40(b)(1), 106.52, 106.53(b), 106.57(b)–(c). As we discuss in this opinion, we see no reason to

establish different substantive standards for sex discrimination under Title IX and under Title VII.

**7.** Mabry's counsel argued as follows:

Now, I think Your Honor has the discretion to say, Well, this is not a Title IX case, this is a Title VII case, I don't have to follow that law, but it would seem to me that if it's sex discrimination in one context, it's no less sex discrimination in another context simply because it comes down under another Roman numeral in the book, and that if Your Honor would call this the law in a Title IX case persuasively, Your Honor ought to call it the law in a Title VII case and ought not to argue with law that in another context Your Honor would have to enforce against Dr. Sullivan or the people at Trinidad State Junior College.

R. Vol. II at 153.

Accordingly, Mabry's Title IX claim would be barred because the district court ruled in her Title VII action that defendants committed no sex discrimination in her termination. Mabry had a full opportunity to present her case of employment-related sex discrimination to the court in the course of her Title VII case, including any evidence that defendants' consideration of her marital or parental status resulted in sex discrimination against her or had a disparate impact on women. R. Vol. II at 93–94. There is no new evidence which she could present under Title IX which she was unable to present under Title VII. Indeed, while there has been some question whether Title IX prohibits disparate impact discrimination, as Title VII does, or requires proof of intentional discriminatory conduct, Title IX certainly sweeps no broader than Title VII. Mabry may not have one more opportunity to show unlawful discrimination, based on the identical facts presented to the court before, but this time under Title IX rather than Title VII.

For the foregoing reasons, the judgment of the district court is AFFIRMED.