642 F.2d 362
 27 Fair Empl.Prac.Cas. 1495,
25 Empl. Prac. Dec. P 31,770,
2 Employee Benefits Ca 1291
Frances WAMBHEIM, individually and on behalf of all women
similarly situated, Plaintiff-Appellant,
and
Catherine Heggelund, individually and on behalf of all women
similarly situated, Plaintiff in Intervention and Appellant,
v.
J. C. PENNEY COMPANY, INC., Defendant and Appellee.
 No. 79-3306.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1981.
Decided April 20, 1981.
 
 Vella M. Fink, Washington, D. C., Bonjour, Gough, Stone & Remer, Hayward, Cal., on brief; Deborah Reik, Washington, D.C., Kerry M. Gough, Hayward, Cal., argued, for plaintiff-appellant.
 Don T. Hibner, Jr., Los Angeles, Cal., on brief; David W. Farrar, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., argued, for defendant and appellee.
 Appeal from the United States District Court Northern District of California.
 Before FARRIS and FERGUSON, Circuit Judges, and CRAIG,* District Judge.
 FERGUSON, Circuit Judge:
 
 
 1
 Plaintiffs Frances Wambheim and Catherine Heggelund brought a class action under Fed.R.Civ.P. 23 alleging that two policies of J.C. Penney Co. violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,[1] and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). Penney's medical insurance plan includes a head-of-household rule which permits the spouse of an employee to receive medical and dental benefits only if the employee earns more than the spouse. Until 1977, Penney also included in its medical plan maternity benefits for its married, but not for unmarried, women. Plaintiffs claim that those provisions constitute illegal sex discrimination.
 
 
 2
 The district court granted Penney's motion for summary judgment, concluding that the facts did not constitute a prima facie case of discrimination. We reverse and remand.I. FACTS
 
 A. The Head of Household Rule
 
 3
 From 1955 until 1971, Penney's insurance policy was facially discriminatory, allowing only men to receive coverage for their spouses. In 1971, management changed the provision to the facially neutral head-of-household rule, allowing both sexes to receive dependent coverage if the employee earned more than 50% of the combined income of the spouses. The new rule excludes as income money earned from stocks, bonds, savings accounts, disability benefits, social security or pensions.
 
 
 4
 At the time of the change, Penney continued coverage as before, regardless of income, for the spouses of employees (all necessarily male) formerly included in the plan. This grandfathering provision was discontinued when the instant action was filed.
 
 
 5
 Penney's work force consists of 70% women. Sixty percent of these women work in low-paying sales positions, compared to 33% of the men Penney employs. Women occupy 6.7% of the profit-sharing management positions and 35.5% of the lower-level management. As a result, 37% of the women covered by Penney's medical plan receive dependent coverage; the comparable figure for men is 95%.
 
 
 6
 Wambheim claims that Penney's hiring practices, the history of its medical insurance program,[2] and its refusal to include all earnings in its definition of income indicate that its head-of-household rule is a pretext for the continuation of discrimination against women. Penney claims that the rule is neutral on its face and justified by cost analysis. The Equal Employment Opportunity Commission ("EEOC") in its amicus curiae brief contends that its guidelines and a Department of Labor regulation prohibit head-of-household rules.[3]
 
 
 7
 The district court granted Penney's motion for summary judgment, finding that Wambheim had failed to prove a prima facie case of discrimination. The court relied on City of Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702, 711 n.20, 98 S.Ct. 1370, 1376 n.20, 55 L.Ed.2d 657 (1978), which states:
 
 
 8
 Even a completely neutral practice will inevitably have some disproportionate impact on one group or another. Griggs does not imply, and this Court has never held, that discrimination must always be inferred from such consequences.
 
 
 9
 The district court held that a prima facie case is not established by disproportionate effect alone.
 
 B. The Maternity Benefits Rule
 
 10
 Until 1977, Penney's medical coverage included maternity benefits for married women only. Heggelund claims that this policy constituted "sex-plus" discrimination, i.e., discrimination based on sex plus another facially neutral factor marriage and that Penney's discriminatory history is evidence of an invidious intent. Furthermore, Heggelund asserts that this policy had a disproportionate impact on women because of the substantial disparity in the numbers of men and women receiving dependent coverage.
 
 
 11
 The district court held that Heggelund failed to prove a prima facie case because she did not demonstrate disproportionate impact. The court grounded its result on a finding that unmarried men and women are both denied benefits under the plan.
 
 II. ANALYSIS
 A. The Head-of-Household Rule
 
 12
 The district court held that Wambheim failed to prove a prima facie case of discrimination. We disagree, and accordingly reverse the summary judgment entered in favor of defendants.
 
 
 13
 A prima facie case is established in a Title VII case if the challenged employment policy is based on gender. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Proof of a neutral policy's substantially disparate impact also establishes a prima facie case.[4] Id. at 431, 91 S.Ct. at 853. The Supreme Court has established a three-step test regarding proof of discrimination when parties assert disparate impact. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
 
 
 14
 First, the plaintiff must demonstrate a facially discriminatory policy or a facially neutral policy which has a substantially disproportionate impact. 411 U.S. at 802 n.14, 93 S.Ct. at 1824 n.14. See Griggs v. Duke Power Co., supra, 401 U.S. at 431, 91 S.Ct. at 853. This showing constitutes the prima facie case. Second, the employer may defend on the ground of a valid business justification. 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant offers no proof to justify the practice or policy, the court is entitled to "assume no justification exists," Nashville Gas Co. v. Satty, 434 U.S. 136, 143, 98 S.Ct. 347, 352, 54 L.Ed.2d 356 (1977), and find discrimination. On the other hand, the court is not compelled to find discrimination on the set of facts required to prove a prima facie case. Manhart, supra, 435 U.S. at 711 n.20, 98 S.Ct. at 1376 n.20; Satty, supra, 434 U.S. at 145, 98 S.Ct. at 353. Proof of disparate impact accordingly satisfies the burden of going forward, but may or may not satisfy the burden of persuasion. Finally, the plaintiff may counter that defense with evidence of a prior history of discriminatory intent. Such a history may demonstrate that the challenged policy is in reality a pretext for further invidious discrimination. 411 U.S. at 804, 93 S.Ct. at 1825.
 
 
 15
 The district court, relying on footnote 20 in Manhart, held that a prima facie case could not be established by disparate impact alone. Accordingly, it granted defendant's motion for summary judgment. The court thus misapplied the Title VII analysis described above. Disparate impact, while not proving a case of discrimination, does constitute a prima facie case. The figures introduced by Wambheim show that only 37% of the women covered by Penney's medical plan receive dependent coverage, as opposed to 95% of the men. Because of this disproportionate impact, a prima facie case exists.[5] The decision to grant summary judgment must therefore by reversed.[6]
 
 B. The Maternity Benefits Rule
 
 16
 The district court found that the provision of maternity benefits only for married women did not produce a disproportionate impact on women, because single men would also be denied these benefits for dependents. Heggelund correctly asserts that the court looked only to the language of the rule and not to its operation under Penney's employment practices.
 
 
 17
 The maternity provision and the head-of-household provision exist concurrently. Therefore, the maternity provision must be evaluated in the context of a plan which includes the head-of-household rule. Ninety-five percent of the men enrolled in the plan receive dependent coverage, compared with 37% of the women. Conceivably, 63% of the women could be denied coverage for maternity benefits because unmarried, while only 5% of the men are denied benefits for their pregnant dependents.[7] The rule, while facially a marital-status rule, may have been an invidious perpetration of an overall policy to discriminate against women, as Heggelund asserts.
 
 
 18
 While the inclusion in the plan of the no maternity benefits rule is allowed, General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), and the marital status rule may be upheld,[8] the combination of these two rules with a head-of-household rule, which allegedly has a disparate impact on women, may disproportionately affect women covered by the plan. Accordingly, as the district court did not consider the impact in light of the operation of Penney's hiring policies and the head-of-household rule, the challenge to the maternity benefits rule is remanded to the district court to determine whether that rule, combined with the various policies of Penney, produced a disproportionate impact on women not evidenced by the words of the rule alone.[9]
 
 
 19
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Walter E. Craig, Senior United States District Judge, District of Arizona, sitting by designation
 
 
 [1]
 The Civil Rights Act was amended in 1978 to include pregnancy as a factor in the definition of "on the basis of sex." 42 U.S.C. § 2000e(k). Because the facts in this section took place before 1978, this case is not controlled by the amendment; accordingly, we do not consider it
 
 
 [2]
 For instance, Penney continued coverage for the wife of one management employee after her income exceeded his. Penney claims that this was accidental
 
 
 [3]
 The Department of Labor regulation states that head-of-household status does not constitute a "factor other than sex" exception to the Equal Pay Act:
 Sometimes differentials in pay to employees performing equal work are said to be based on the fact that one employee is head of the household and the other, of the opposite sex, is not. In general, such allegations have not been substantiated. Experience indicates that where such a factor is claimed, wage differentials tend to be paid to the employees of one sex only, regardless of the fact that employees of the opposite sex may bear equal or greater responsibility as head of a household or for the support of parents or other family dependents. Accordingly, since the normal pay practice in the United States is to set a wage rate in accordance with the requirements of the job itself and since a head of household or head of family status bears no relationship to the requirements of the job or to the individual's performance on the job, the general position of the Secretary of Labor and the administrator is that they are not prepared to conclude that any differential allegedly based on such status is based on a factor other than sex within the intent of the statute.
 
 
 [29]
 CFR § 800.149
 The EEOC Guideline states that such a rule is a prima facie violation of Title VII:
 Where an employer conditions benefits available to employees and to their spouses on whether the employee is the "head-of-household" or "principal wage earner" in the family unit, the benefits tend to be available only to male employees and their families. Due to the fact that such conditioning discriminatorily affects the rights of women employees, and that "head-of- household" or "principal wage earner" status bears no relation to job performance, benefits which are so conditioned will be found a prima facie violation of the prohibitions against sex discrimination found in the act.
 
 
 [29]
 CFR 1604.9(c)
 
 
 [4]
 Though the Court requires proof of intent to maintain a discrimination challenge founded upon the constitution, Washington v. Davis, 426 U.S. 229, 247-48, 96 S.Ct. 2040, 2051-52, 48 L.Ed.2d 597 (1976), the standard of a prima facie case under Title VII remains that created in Griggs. Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1976)
 
 
 [5]
 Penney asserts that the plan is facially neutral and in fact an improvement over the prior policy which on its face treated women differently than men. It asserts a cost justification as its valid business reason. Wambheim counters that Penney's policy is in reality a pretext for invidious discrimination. She asserts as evidence Penney's prior policy which facially discriminated against women. She also presents facts demonstrating differing hiring and promotional policies towards men and women. The district court did not consider the validity of Penney's defense or Wambheim's assertion of pretext
 
 
 [6]
 We reverse the district court on the head-of-household issue because disproportionate impact may be demonstrated if 63% of women are married and cannot obtain dependent coverage under the rule. In Part B we reverse on the maternity benefits issue because if that 63% without dependent coverage are single, the disproportionate impact falls too heavily on women under that rule. The record does not indicate whether either of these contradictory assumptions is correct. The district court may not grant summary judgment without a determination of the disputed issue of impact which relies on an explanation of these facts
 
 
 [7]
 See footnote 5, ante
 
 
 [8]
 Reliance on cases upholding policies based on marriage, Grayson v. The Wickes Corp., 607 F.2d 1194; 20 FEP Cas. 1289 (7th Cir. 1979), Stroud v. Delta Airlines, Inc., 544 F.2d 892 (5th Cir.), cert. denied, 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110 (1977), are, therefore, not directly controlling in this case. In all such cases, the parties did not show that women had been affected disproportionately
 
 
 [9]
 The district court's decision should be distinguished from that in General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), which held that a policy which excluded maternity benefits did not constitute a prima facie case under Title VII. Gilbert is based on the fact that the plan produced no disparate impact on women