Frances WAMBHEIM, individually and on behalf of all women similarly situated, Plaintiff-Appellant,

and

Catherine Heggelund, individually and on behalf of all women similarly situated, Plaintiff in Intervention-Appellant,

v.

J.C. PENNEY COMPANY, INC., Defendant-Appellee.

No. 82–4104.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1983.

Decided May 17, 1983.

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 15, 1983.

Before WRIGHT and CHOY, Circuit Judges, and JAMESON,* Senior District Judge.

PER CURIAM:

Appellants brought a class action contending that two provisions of J.C. Penney's employee medical insurance policy violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Equal Pay Act of 1963, 29 U.S.C. § 206(d).[1] We review their challenge to the head-of-household provision, which permits coverage for an employee's spouse only if the employee earns more than the spouse. Their challenge to the provision denying maternity benefits to unmarried women was not pursued on this appeal.

I. *Background*

Penney offers medical and dental insurance to its employees who work at least 20 hours per week. Penney pays about 75 percent of the cost. There are three contribution rates for employees: (1) for the employee only; (2) for the employee and one dependent, whether spouse or child; and (3) for the employee and two or more dependents.

From 1955 to 1971, only male employees could obtain coverage for their spouses. In 1971, the head-of-household rule was adopted, allowing any employee to obtain coverage for a spouse if the employee earned more than half of the couple's combined income, excluding interest and investment income, disability benefits, social security, and pensions. Penney continued coverage of all wives who were formerly included until this suit was filed.

Seventy percent of Penney's employees are female and most of these women work in low-paying sales positions. Women hold 6.7 percent of the profit-sharing management positions and 35.5 percent of the lower-level management positions. Only 37

Michael Marowitz, Bonjour, Gough, Stone & Remer, Hayward, Cal., Karen MacRae Smith, E.E.O.C., Washington, D.C., for plaintiff-appellant.

Don T. Hibner, Jr., Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for defendant-appellee.

---

* Of the District of Montana.

1. Appellants have not disputed Penney's contention that no evidence of an Equal Pay Act violation was introduced. The trial court did not consider the Equal Pay claim in its disposi-

tion. Further, appellants' arguments on appeal have mentioned that claim only in passing. It has not been presented properly for review here.

percent of the women, but 95 percent of the men covered by the medical plan, receive dependent coverage. Only 12.5 percent of the married female employees qualified as heads of household, while 89.34 percent of the married males qualified.

The district court's first decision granted Penney's motion for summary judgment. It held that the facts did not establish a prima facie case of discrimination.

On appeal of that decision, we reversed. *Wambheim v. J.C. Penney Co.,* 642 F.2d 362 (9th Cir.1981). We held that proof of the head-of-household policy's disparate impact established a prima facie case of discrimination. *Id.* at 365.

Following trial on remand, the district court entered judgment for Penney. It concluded that Penney had established a business justification for its head-of-household rule and that the rule was not a pretext for discrimination.

## II.  *Applicable Law*

■ Title VII prohibits two types of employment discrimination. First, it prohibits disparate treatment: intentional unfavorable treatment of employees based on impermissible criteria. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335–36 & n. 15, 97 S.Ct. 1843, 1854–55 & n. 15, 52 L.Ed.2d 396 (1977). Second, it prohibits practices with a discriminatory impact: facially neutral practices that have a discriminatory impact and are not justified by business necessity. *Id.* Appellants contend that the facially neutral head-of-household rule has an impermissible disparate impact on female employees.

This case is an unusual disparate impact case because it alleges a violation of § 703(a)(1) of the Act: discrimination with respect to "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). The disparate impact the-

ory has been developed in cases alleging violations of § 703(a)(2): discrimination with respect to "employment opportunities or . . . status as an employee." 42 U.S.C. § 2000e–2(a)(2). *E.g., Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). The Supreme Court has not decided explicitly that disparate impact analysis is appropriate in a § 703(a)(1) case. *See City of Los Angeles Department of Water & Power v. Manhart,* 435 U.S. 702, 711 n. 20, 98 S.Ct. 1370, 1376 n. 20, 55 L.Ed.2d 657 (1978).

■ A recent decision of that Court, however, implies that disparate impact analysis may be applied to a § 703(a)(1) claim. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982). Without specifically considering the distinction between § 703(a)(1) and (a)(2) claims, in *Bonilla v. Oakland Scavenger Co.,* 697 F.2d 1297, 1302–04 (9th Cir.1982), *petition for cert. filed,* 51 U.S.L.W. 3775 (U.S. April 15, 1983) (No. 82–1699), this circuit has applied a disparate impact analysis to a § 703(a)(1) claim. We conclude that disparate impact analysis is appropriate in this § 703(a)(1) case.

■ To establish a prima facie case under a disparate impact theory, a plaintiff must show that the challenged practice has a significantly discriminatory impact. *Connecticut v. Teal,* 102 S.Ct. at 2531. It is not necessary to establish discriminatory intent. *Griggs,* 401 U.S. at 432, 91 S.Ct. at 854; *Bonilla,* 697 F.2d at 1303. This court has decided already that a prima facie case was established by these plaintiffs. *Wambheim,* 642 F.2d at 365.

■ The burden, therefore, shifted to Penney to justify its policy.[2]  *See Albe-*

---

2. On the first appeal in this case, the court relied heavily on *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in its discussion of the shifting burdens in a disparate impact case. *McDonnell Douglas,* however, was a disparate treat-

ment case. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

The court's confusion did not taint its decision on the only issue presented there, the existence of a prima facie case of discrimina-

*marle Paper,* 422 U.S. at 425, 95 S.Ct. at 2375; *Bonilla,* 697 F.2d at 1303. The standard applied in § 703(a)(2) cases is business necessity, *see Griggs,* 401 U.S. at 431, 91 S.Ct. at 853, manifest relationship to the employment, *see Connecticut v. Teal,* 102 S.Ct. at 2531, or necessity for the efficient operation of the business. *See Peters v. Lieuallen,* 693 F.2d 966, 969 (9th Cir.1982); *see generally Contreras v. City of Los Angeles,* 656 F.2d 1267, 1278–80 (9th Cir. 1981). Because none of these measures is particularly applicable to the § 703(a)(1) employment benefits case, we adopt the standard articulated in *Bonilla:* Penney must "demonstrate that legitimate and overriding business considerations provide justification." *Bonilla,* 697 F.2d at 1303.

■ Even if Penney established a justification for the head-of-household policy, the plaintiffs could prevail by showing that the practice was used as a pretext for discrimination. *Connecticut v. Teal,* 102 S.Ct. at 2531. Evidence that the policy was a pretext might include proof of past intentional discrimination, *see United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977), or proof that an alternative policy would serve the employer's legitimate interests with less disparate impact. *Albermarle Paper,* 422 U.S. at 425, 95 S.Ct. at 2375.

### III. *Penney's Medical Plan*

Because the sufficiency of the appellants' prima facie case has been established already, *Wambheim,* 642 F.2d at 365, we begin our review by considering Penney's justification for its head-of-household rule.

Penney explains that the rule is designed to benefit the largest number of employees and those with the greatest need. It concluded that dependent children and spouses covered under the head-of-household rule have the greatest need for dependent coverage. Qualifying spouses are less likely to have other medical insurance. It seeks to

keep the cost of the plan to its employees as low as possible, so that the needy can afford coverage. If all spouses are included, the contribution rates will increase.

■ We conclude that these are legitimate and overriding business justifications for the head-of-household rule. Penney's justification for making qualification as a head of household dependent on comparative earned income does not conflict with Title VII's requirement of nondiscriminatory employment practices.

Appellants' argument that Penney's defense is an impermissible cost defense is without merit. They rely on the Supreme Court's decision in *City of Los Angeles Department of Water & Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), which holds that the cost differential of providing benefits to male and female employees is not a legitimate justification for intentional discrimination between the sexes.

*Manhart* is not controlling here. Penney has offered legitimate and overriding business justifications for adoption of its head-of-household rule. Cost undoubtedly was a factor considered in the process, as it will be in structuring any employee benefits plan. *Manhart* does not require the conclusion that the neutral policy adopted violates Title VII, when it is justified by independent legitimate business considerations.

■ That, however, does not end our inquiry. Penney's business justification defense was countered by evidence that the rule is a pretext for impermissible discrimination. Penney historically has discriminated against women in providing benefits. It could have chosen other methods to determine spousal eligibility for coverage.

The district court concluded that the head-of-household rule was not a pretext for sex discrimination. This was a finding of fact, which we shall overturn only if it is clearly erroneous. *See Pullman-Standard*

---

tion. Because it relied on *McDonnell Douglas,* its statement of the employer's burden in rebuttal of the prima facie case was erroneous, and we are not bound to apply it here. *See United States v. Fullard-Leo,* 156 F.2d 756, 757 (9th Cir.1946); *Electrical Research Products v. Gross,* 120 F.2d 301 (9th Cir.1941); 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.404[1] (2d ed. 1982).

*v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 1789–91, 72 L.Ed.2d 66 (1982). We are not convinced that a clear mistake has been made.

The district court correctly concluded that Penney's head-of-household rule does not violate Title VII.

The judgment is affirmed.