**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**FREMONT CHRISTIAN SCHOOL, Defendant.**

**No. C–83–2619 WHO.**

United States District Court, N.D. California.

April 16, 1984.

David T. Kelley, E.E.O.C., San Francisco, Cal., Office of General Counsel, E.E.O.C., Washington, D.C., for plaintiff.

William B. Ball, Ball & Skelly, Harrisburg, Pa., for defendant.

## OPINION

ORRICK, District Judge.

The issue in this case raised by plaintiff, Equal Employment Opportunity Commission's (the "EEOC"), motion for summary judgment against defendant, Fremont Christian School (the "School"), is whether the School, which is owned and operated by the First Assembly of God Church (the "Church"), can, with impunity, discriminate against female employees by failing to provide them with health insurance benefits allowed male employees. Holding such discrimination violates Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as the Equal Pay Act

of 1963, 29 U.S.C. § 206(d) (the "Act"), and that the School's policy is not protected by the Free Exercise or Establishment Clauses of the First Amendment, the Court grants the EEOC's motion for summary judgment.

## I

The material facts in this case, as to which there is no genuine issue, are simple and may be briefly summarized as follows. The School is a private school providing instruction from preschool through the twelfth grade for approximately 1,500 students. There are 111 faculty members. The School curriculum emphasizes religious training, but also includes secular education such as math, science, history, english, home economics, and other courses available to students in nonsectarian schools.[1]

Personnel policies for the School are set by the governing board of the Church upon the recommendation of the school board. Each of these boards is comprised of nine elected members belonging to the Church plus a secretary, treasurer, and the senior church pastor, who serves as chairperson of the governing board.

Since March, 1975, the School has provided health insurance coverage to its full-time teachers and other employees. This insurance, however, is limited to employees who are the "head of the household," a role the Church believes, citing Scripture, can only be performed by the husband. The Church has chosen certain ways to give recognition to the husband as "head of the household." Among those is its provision for medical coverage for its employees. In effect, the restriction deprives female employees of health insurance benefits.[2]

## II

### A

At the outset, the Court considers the School's position that there are genuine issues of material fact and, therefore, summary judgment will not lie.

In ruling on a motion for summary judgment under Federal Rule of Civil Procedure 56(a), the court's function is to determine whether genuine issues of material fact are in dispute, and to grant summary judgment if no such issue exists, and if the movant is entitled to judgment as a matter of law. *Federal Deposit Insurance Corp. v. First Finance Corp.*, 587 F.2d 1009 (9th Cir.1978); *Fruehauf Corp. v. Royal Exchange Assurance of America, Inc.*, 704 F.2d 1168 (9th Cir.1983).

The School argues strenuously that a number of factual issues allegedly remain for adjudication, namely, that it must be allowed to show how it is shielded from the application of Title VII and the Act by the Free Exercise and Establishment Clauses of the First Amendment. First, the School must show that its employment practices are based on religious belief, *i.e.*, that the policy at issue is rooted in the School's Free Exercise rights. Second, in conjunction with those rights, the School alleges that it must be accorded the opportunity to demonstrate the "injury to religious exercise" resulting from application of Title VII and the Act to its personnel policies. And, third, in seeking to assert the protection of the Establishment Clause, the School contends that the degree to which it is, or is not, a religious institution is a matter of fact, thus precluding summary judgment.

### B

■ As authority for its overall position, the School relies on the precedent in *Wis-*

---

1. The summary of facts has been prepared from the uncontroverted declarations of Pastor Gore and Reverend Rankin provided by the Church, and declarations provided by the EEOC. As is proper, they have been summarized in a manner most favorable to the party opposing the motion, namely, the School.

2. Health coverage has been extended to females, who otherwise do not qualify under the School's policy, because of extenuating circumstances such as a husband is in jail or is a student. Rankin deposition, 18:25, 24:13. Of particular significance is the fact that the School's married female employees are eligible for disability and group life insurance.

*consin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972) (it is necessary to show that the activity prohibited by the governmental activity is rooted in religious belief), and in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

Subsequent to *Yoder* and *Sherbert,* however, the courts formulated a three-part test for determining whether a neutrally based statute, such as Title VII and the Act, may be applied to an institution that raises a Free Exercise claim to justify an otherwise discriminatory policy. *EEOC v. Mississippi College,* 626 F.2d 477 (5th Cir. 1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981), *citing Wisconsin v. Yoder, supra,* and *Sherbert v. Verner, supra; EEOC v. Pacific Press Publishing Ass'n,* 676 F.2d 1272 (9th Cir. 1982).[3] And, in a similar vein, *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), sets forth a three-prong test for determining if a statute obstructs rights under the Establishment Clause.

### 1

The School alleges that Title VII and the Act do not apply to a policy grounded in religious belief, insofar as the School's personnel practices are shielded by the Free Exercise Clause. To determine whether a neutrally-based statute, such as Title VII and the Act, violates the Free Exercise Clause the court weighs three factors: (1) the magnitude of the statute's impact on the exercise of a religious belief; (2) the existence of a compelling state interest justifying the burden imposed upon the exercise of the religious belief; and (3) the extent to which recognition of an exemption from the statute would impede objectives sought to be advanced by the statute. *Pacific Press, supra,* 676 F.2d at 1279,

citing *EEOC v. Mississippi College, supra,* 626 F.2d at 488, *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981), *citing Wisconsin v. Yoder, supra,* and *Sherbert v. Verner, supra.*

As to the first prong of the *Mississippi College* test, the School alleges that subjecting its employment practices to Title VII and Equal Pay provisions will have a major impact on the exercise of its religious beliefs. The Court finds, however, that requiring the School to refrain from discriminating against female employees does not infringe the School's free exercise of its religious beliefs. This is particularly so in view of the fact that the female employees at the School are eligible for group life and disability insurance.[4] If those practices do not undermine the School's religious goals, then it is inconceivable that providing health benefits to female employees will have the opposite effect.

Moreover, the School's wages and other usual conditions of employment are comparable for all employees, regardless of sex. Similarly, in *Pacific Press,* the nonprofit religious publishing house had a policy of paying wages without discrimination on the basis of sex, race, or national origin. *Pacific Press, supra,* 676 F.2d at 1279. Yet, in practice, the publishing house used a sexually discriminatory wage scale. In view of the disparity between policy and practice, the court held that:

> "[E]nforcement of Title VII's equal pay provision does not and could not conflict with Adventist religious doctrines, nor does it prohibit an activity 'rooted in religious belief.'"

*Id.* at 1279, *citing Wisconsin v. Yoder, supra,* 374 U.S. at 215, 92 S.Ct. at 1533.

---

**3.** In *EEOC v. Mississippi College,* 626 F.2d 477, 485 (5th Cir.1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981), the court expressly held that Title VII is applicable to a religious institution primarily engaged in education. That conclusion was reached after extensive review of the College's Free Exercise and Establishment Clauses claims. Similarly, in *EEOC v. Pacific Press Publishing Ass'n,* 676 F.2d

1272, 1277 (9th Cir.1982), the Ninth Circuit ruled that a religious publishing house is not exempt from Title VII, nor does the statute infringe upon rights guaranteed by the religion clauses.

**4.** *See* note 2, *supra.*

Likewise, the School's policy of providing comparable wages to male and female employees, an implicit nondiscriminatory policy, coupled with female eligibility for group life and disability insurance, renders meritless the School's allegation of interference with its religious-based health insurance plan.

The second prong of the Free Exercise test, *i.e.,* the existence of a compelling state interest, is readily apparent. By enacting Title VII and the Act, Congress clearly targeted the elimination of all forms of discrimination as a "highest priority." *See* S.Rep. No. 872, 88th Cong., 2d Sess. pt. 1, at 11, 24 (1964), U.S.Code Cong. & Admin.News 1964, 2355; *see also Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

"Congress' purpose to end discrimination is equally if not more compelling than other interests that have been held to justify legislation that burdened the exercise of religious convictions. E.g., *Braunfeld v. Brown,* 366 U.S. 599 [81 S.Ct. 1144, 6 L.Ed.2d 563] (1961) (state law prohibiting retail sales on Sunday)."

*Pacific Press, supra,* 626 F.2d at 1280.

Finally, to permit the School to selectively distribute health insurance benefits, specifically on the basis of sex, would defeat Congress' intention to protect employees of religious institutions. 42 U.S.C. § 2000e–1, Title VII § 702. Furthermore, the underlying purpose for enacting Title VII and the Act would be thwarted. As noted by the *Pacific* court, the effect would be to "withdraw Title VII's [and the Act's] protection from employees * * * affiliated with the * * * Church," including those who run the schools. *Pacific Press, supra,* 626 F.2d at 1280.

Altogether, equitable disbursement of health insurance coverage is not an impediment to the free exercise of the School's religious convictions. Thus, the School's allegation of immunity from Title VII and the Act is unfounded.

2

The School's second religious claim arises from the Establishment Clause.

Contending that Title VII and Equal Pay liability would unduly entangle church and state, the School argues that the religious-based "head of the household" policy is immune from government regulation because the policy represents the School's Establishment Clause rights.

Examining statutes for Establishment Clause violations involves yet another three-part test: (1) the statute must have secular purpose; (2) the primary effect of the statute must neither advance nor inhibit religion; and (3) the statute must not foster excessive entanglement with religion. *Pacific Press, supra,* 626 F.2d at 1281, *citing Lemon v. Kurtzman, supra,* 403 U.S. at 612, 91 S.Ct. at 2111. *See also, St. Elizabeth Community Hospital v. NLRB,* 708 F.2d 1436, 1440 (9th Cir.1983).

It is well settled that Title VII, and by analogy, the Act, have a secular purpose and do not have the primary effect of inhibiting religion. *Pacific Press, supra,* 626 F.2d at 1282. The major inquiry is the third element of the test, that is, the degree to which a finding for the EEOC would result in "excessive entanglement" with the School. *Accord, Id.; Mississippi College, supra; EEOC v. Southwestern Baptist Theological Seminary,* 651 F.2d 277 (5th Cir.1981).

In *Southwestern,* the court ordered the seminary to comply with EEOC filing requirements. While recognizing that "the character and purposes of the seminary are wholly sectarian," the court nevertheless found that such a status did not support a complete exemption from EEOC regulations, nor did it constitute "excessive entanglement" between church and state. *Id.* at 281.

The School, although operated as a sectarian educational institution, offers a range of courses resembling other nonsectarian private and public schools. Thus, the School's character is arguably less sectarian than the *Southwestern* seminary, which is devoted exclusively to training ministers. *A fortiori,* applying Title VII and the Act to the School's personnel poli-

cies does not involve "excessive entanglement" any more than does compliance with EEOC filing requirements by a wholly sectarian institution like the *Southwestern* seminary.

Moreover, *Pacific Press* found that a publishing house involved solely in producing religiously-oriented materials is "somewhat less sectarian than * * * a seminary." *Pacific Press, supra,* 626 F.2d at 1282, *citing Southwestern, supra.* Consequently, the court saw minimal risk of entanglement between the EEOC and *Pacific Press,* particularly given the holding in *Southwestern.* Compared, then, to a seminary for theological ministers, a school with secular as well as sectarian training, or a religiously-oriented publishing house, is as free of burdensome entanglement as is a wholly sectarian seminary.

The present case is also distinguishable from *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), because neither the judgment nor Title VII's enforcement mechanisms result in any ongoing scrutiny of the School's operations. In *Catholic Bishop,* the court found a serious risk of excessive entanglement because the enforcement of the National Labor Relations Act's collective bargaining provisions "would have empowered the NLRB to judge the good faith beliefs of clergy-administrators * * *." *Pacific Press, supra,* 626 F.2d at 1282. The EEOC's reach over the School's operations does not entail, in any manner, the degree of entanglement noted in *Catholic Bishop.*

In summation, subjecting the School to the mandate of Title VII and the Act does not involve abridgement of rights guaranteed by the Establishment Clause. More significantly, however, is the Court's presumption in favor of the School's contention that the "head of the household" policy is based upon religious belief. In doing so, the School benefits from a full constitutional examination of its religious claims, whereas *Pacific Press* supports dismissal of those claims as a matter of law.

There, the disparity between a nondiscriminatory wage policy and *Pacific Press'* actual practice of paying females less than males moved the court to hold that Title VII's provisions did not "prohibit an activity 'rooted in religious belief'." *Pacific Press, supra,* 626 F.2d at 1279, *citing Wisconsin v. Yoder, supra.*[5] Similarly, *Pacific Press* would support the conclusion that the School, in paying comparable wages to employees of both sexes, in addition to providing female employees with group life and disability insurance, does not base its "head of the household" policy on religious belief.

### 3

In light of the foregoing case law, the Court has examined the School's factual contentions with respect to the Free Exercise and Establishment Clauses. *See* discussion, *infra.* Although the Court assumes the School's insurance policy to be based upon religious belief, the controlling law nevertheless holds that application of Title VII in the present context is not violative of the School's constitutional right to promote its spiritual doctrines. And, the Act, a statute clearly analogous to Title VII, is likewise devoid of statutory directives that impede the religious character of the School. In short, whether the School's health insurance policy is predicated on religious belief or not, the religion claims are immaterial to the resolution of this motion.

Accordingly, the Court finds that no material issue of fact remains in dispute, and turns to the substantive merits of the partial summary judgment motion.

### III

### A

■ At the very threshold of determining whether the School has violated Title VII, the Court must consider the School's argument that § 702 of the Act exempts it from compliance with the mandate of the

---

5. *See* Section IIIB of this Opinion.

statute solely because it is a religious educational institution.

Section 702 of Title VII, 42 U.S.C. § 2000e–1 provides in pertinent part:

"This subchapter shall not apply to an * * * educational institution * * * with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such * * * educational institution * * * of its activities."

The School's interpretation of § 702 conflicts with the Congressional purpose for enacting that section of Title VII. Rather than creating a blanket exemption for religious educational institutions, § 702 is simply a means of acknowledging the right of such an institution to employ individuals who share common religious beliefs. In other words, the School is entitled to hire only members of its faith for teaching positions and the like, but may not, under the § 702 exemption, discriminate against its employees thereafter.

"The legislative history of this exemption shows that although Congress permitted religious organizations to discriminate in favor of members of their faith, religious employers are not immune from liability for discrimination based on race, sex, [or] national origin * * *."

*Pacific Press, supra,* 676 F.2d at 1276.

Thus, § 702 of Title VII does not pertain to the School's policy of providing only male employees with health insurance coverage.

### B

Title VII forbids intentional employment discrimination based on disparate treatment. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Wambheim v. J.C. Penney Co.,* 705 F.2d 1492, 1494 (9th Cir. 1983). Specifically, 42 U.S.C. § 2000e–2 provides in pertinent part as follows:

"(a) it shall be an unlawful employment practice for an employer—

(1) to * * * discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex * * *."

Although a typical disparate treatment case must pass through three stages for the plaintiff to prevail, it is possible that a plaintiff's *prima facie* case is so conclusive that as a matter of law the defendant cannot rebut it. *Muntin v. State of California Parks & Recreation Dept.,* 671 F.2d 360, 362 (9th Cir.1982) (manager of state historic shipyard admitted his preference not to hire women as deck hands); *Gerdom v. Continental Airlines, Inc.,* 692 F.2d 602, 609 (9th Cir.1982) (airline's weight-limit policy for female flight attendants discriminatory as a matter of law).

Here, the School's policy is to provide health insurance only to a full-time employee who is the "head of the household." However, the "head of the household" is conclusively presumed to be the husband, thus depriving females similarly situated from the benefits of health coverage.

As justification for the policy, the School again invokes its religious beliefs regarding "differentiated roles of the sexes." Yet, such a justification is not the equivalent of a "business necessity," the standard upon which the opposing party rebuts the charge of discrimination. *Wambheim, supra,* 705 F.2d at 1494.

*Wambheim* and the present case are factually alike in that both deal with a "head of the household" policy for providing health insurance. However, the similarity ends there. In *Wambheim,* the Ninth Circuit found that Penney's "business justification" for a "head of the household" policy was sufficient to overcome a presumption of discrimination, a presumption arising from a clear case of disparate impact on female employees.[6] Here, the School offers no business justification; only its religious beliefs are presented, but the reli-

---

6. Penney's explanations for its rule that permitted medical coverage for an employee's spouse only if the employee earned more than the spouse, that dependent children and spouses covered under the "head of the household" rule had the greatest need for dependent coverage,

gion claims have been dismissed as a matter of law.

Accordingly, in the absence of a business justification for its "head of the household policy," and because the policy expressly discriminates against female employees, the EEOC has made a *prima facie* case of discrimination by the School against its female employees that is neither justified nor rebutted.

## C

Besides an allegation of disparate treatment, the EEOC also contends that the impact of the School's policy on female employees is so great as to constitute discrimination in violation of Title VII.

In *Wambheim, supra,* 642 F.2d 362, at 365 (9th Cir.1981), which is commonly referred to as *"Wambheim I,"* the court found a *prima facie* case of disparate impact inasmuch as the company's "head of the household" medical insurance policy translated into coverage for 95 percent of the male employees compared to coverage for only 35 percent of the female employees. Those figures, in the court's view, were sufficient to sustain a showing of disparate impact.

The statistical spread in the present case is more glaring than in *Wambheim I.* Because of the School's "head of the household" policy, 100 percent of the male employees receive health insurance, whereas only 9 percent of the female employees benefit therefrom.[7] In short, the impact on female employees at the School is of a magnitude approaching a total disparity between male and female individuals employed by the School. Thus, the EEOC has come forth with evidence creating a rebuttal presumption of disparate impact.

Such a presumption, however, may be overcome by a showing that the School's policy was adopted for legitimate business reasons. *Wambheim v. J.C. Penney Co.,* 705 F.2d 1492, 1494 (9th Cir.1983). As noted in the foregoing section regarding a *prima facie* case of disparate treatment, the School offers no business justification for its policy. Rather, the School chooses to rely solely on religion claims. Those claims, however, do not suffice to overcome the clear presumption of disparate impact present in the School's personnel policies.

## IV

■ The School also violates the Equal Pay Act, 29 U.S.C. § 206(d), which provides that employers may not pay different "wages" to employees whose performance requires equal skill and effort. The term "wages," moreover, has been found to include fringe benefits. *Laffey v. Northwest Airlines,* 567 F.2d 429, 455 n. 175 (D.C.Cir. 1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (overnight accommodations for stewards/stewardesses held to be a benefit within the meaning of "wages" for purposes of the Act). Additionally, regulations define "wages" broadly to include all payments made "to or in behalf of the employee." 29 C.F.R. § 800.-110 (1975).

Here, health insurance benefits, or one of several fringe benefits offered to the School employees, are distributed unequally to individuals whose skills and efforts are comparable. For example, a female School teacher, who is eligible for group life and disability insurance, and who is paid commensurate with her skills and efforts, is nonetheless denied access to health insurance benefits. Yet, for a male teacher at the School, all benefits are available. The policy is clearly an unlawful departure from the mandate of the Act, and thus creates a presumptive violation of 29 U.S.C. § 206(d). *See Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974).

The presumption may be overcome, similar to the presumption of disparate impact

---

that qualifying spouses were less likely to have medical insurance, and that it sought to keep costs for the plan to its employees as low as possible, were legitimate and overriding business justifications, and therefore did not conflict with Title VII's requirement of nondiscriminatory employment practices. *Wambheim v. J.C. Penney Co.,* 705 F.2d 1492, 1495 (9th Cir.1983).

**7.** The figures supportive of a *prima facie* case of disparate impact were presented by the EEOC. The School does not dispute those figures.

noted in *Wambheim, supra,* by a showing of a "business reason for the policy." *Kouba v. Allstate Insurance Co.,* 691 F.2d 873, 876 (9th Cir.1982) (differential wages for salespeople with varying degrees of experience not violative of the Act, although females impacted more than males). And, the "business reason" must be based on a "factor other than sex." 29 U.S.C. § 206(d)(1).

The School has no grounds to overcome the presumption. Not only does the School not offer a "business reason" for the policy, but the rationale for the policy is explicitly based upon sex in contravention of § 206(d)(1). Accordingly, the School's practices are in violation of the Act.

## V

This Court finds that the School has violated Title VII, 42 U.S.C. § 2000e *et seq.,* and the Equal Pay Act, 29 U.S.C. § 206(d), and is barred from raising the Free Exercise and Establishment Clauses as a defense for its personnel policies. For the foregoing reason, the EEOC's motion for partial summary judgment on liability is hereby granted.