Barbara Jean MARSH,
Plaintiff-Appellant,

v.

EATON CORPORATION, Engineered Fastener Division, Reliance Fasteners Plant (Plant No. 1) and Reliance Wire Mill Plant (Plant No. 2); International Union of Allied Industrial Workers of America, Local No. 28; and International Union of Allied Industrial Workers of America, Local No. 306, Defendants-Appellees.

No. 79–3345.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 3, 1980.

Decided Jan. 30, 1981.

Robert J. Affeldt, Robert J. Affeldt, Inc., L.P.A., Sylvania, Ohio, for plaintiff-appellant.

John P. Palumbo, Stuart O. H. Merz, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for Eaton Corp.

Sorrell Logothetis, Parks & Logothetis, Dayton, Ohio, for Local Nos. 28 and 306.

Before MERRITT and KENNEDY, Circuit Judges, and COOK, District Judge.*

MERRITT, Circuit Judge.

Plaintiff appeals from a finding for defendant, Eaton Corporation, in a class action suit alleging unlawful sex discrimination in employment in violation of 42 U.S.C. § 2000e et seq.

Plaintiff, Barbara Jean Marsh, an employee of Eaton corporation, filed a com-

* The Honorable Julian A. Cook, Jr., District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

plaint with the E.E.O.C. on May 9, 1975. The E.E.O.C. issued a right-to-sue letter. Plaintiff then filed suit in federal court on April 9, 1976, and the District Court certified the suit as a class action.

The Reliance Fastener Plant and Wire Mill are part of Eaton Corporation and are located in Massillon, Ohio. Employees of each plant are members of separate local unions and have separate collective bargaining agreements. Both plants are serviced by a single personnel department located at the Fastener Plant. Plaintiff claims that Eaton (1) assigns new employees in a sexually-discriminatory manner, and (2) inhibits advancement of women through its seniority system.

As of October 7, 1976, there were six females at the Wire Mill. The District Court concluded that the plaintiff had not carried her burden of establishing a *prima facie* case of sex discrimination at the Wire Mill. There was no evidence concerning the initial placement of females at the plant. In light of the absence of evidence concerning the Wire Mill, the District Court was not clearly erroneous in its finding that there was no sex discrimination proven at that plant.

Evidence at trial focused on the Fastener Plant. As of October 7, 1976, sixty females were employed at the Fastener Plant. Twenty-eight were employed as machine tenders, the lowest position in the Springtite Department. Thirty were employed in the junior inspector position, the lowest position in the Ring Department. No males were employed in either of those positions. Prior to 1965, Eaton classified eleven jobs as "female" and maintained separate seniority lists for males and females. Both junior inspectors and machine tenders were previously classified as "female." From 1974–1977, the four years prior to trial, eighty-three persons were hired for the Fastener Plant. Of the forty-four with *no* previous experience, twenty-seven were female and seventeen were male. All the females were placed as junior inspectors or machine tenders; nine of the seventeen males were placed in these positions. *See* District Court opinion, App. 15a. The other eight males were placed in the following positions: four material handlers, two laborers, one slotter-trimmer operator, one wheelabrator.

The District Court concluded that these statistics did not establish a *prima facie* case of sex discrimination. The Court relied upon a statistical analysis that looked to the probability of females being placed as machine tenders/junior inspectors as opposed to males so placed. (*See* District Court Opinion, p. 22a n.13) Through statistical analysis of the small sample size (44), the Court concluded that the variance in initial placement between males and females was insignificant. In this case, 100% of the females hired during the four-year period were placed as machine tenders/junior inspectors; only 52.9% of the males were placed in those positions. Statistical use of the small sample in the manner of the District Court would preclude a smaller employer from being liable for unlawful channeling because only the most egregious and flagrant violations would be reflected through statistical analysis. Particularly in light of statistical evidence from 1964–1974, which indicates an extremely heavy concentration of females in two positions, we must conclude that plaintiff has made out a *prima facie* case of sex discrimination.[1]

The conclusion that plaintiff has established a *prima facie* case of sex discrimination does not settle the case. The defendant is free to rebut the inferences presented by these statistics. "We caution only that statistics are not irrefutable; they come in infinite variety and, like any other kind of evidence, they may be rebutted. In short, their usefulness depends on all of the surrounding facts and circumstances." *Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 1856–57, 52 L.Ed.2d 396 (1977).

---

1. The figures for 1964–1974 did not reflect initial placement of females as compared to males. For this reason only slight inferences may be drawn from them. It was this lack of precision on the part of plaintiff that has made establishment of a *prima facie* case difficult.

■ The evidence presented indicates that all females were channeled into two jobs. Although some males were also placed in these jobs, almost half of the inexperienced males were placed in higher paying positions. There was no evidence that the inexperienced males were qualified for jobs other than machine tender/junior inspector or that the inexperienced females were not so qualified.[2] *See, e. g.*, testimony, App. 35a–39a; District Court opinion p. 12a n.3.

■ Once plaintiff establishes a *prima facie* case of sex discrimination, the burden shifts to defendant to rebut plaintiff's evidence. Accordingly, we reverse the District Court and remand to allow defendants the opportunity to rebut the *prima facie* case through attack on the statistical foundation, evidence of business purpose or other rebutting evidence.

■ Finally, plaintiff has not shown a *prima facie* case of sex discrimination in the use of the facially neutral seniority system used during this period. There was no evidence that a female ever applied through the bidding system for a job that she did not receive.

Accordingly, we affirm in part and reverse in part.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

I respectfully dissent from that portion of the Court's Opinion reversing in part the judgment of the District Court and would affirm its judgment in its entirety.

The District Court held that the plaintiff class had failed to carry its burden of establishing a prima facie case of discrimination in initial job placement during the relevant period. It found that the statistical variance in initial placement between inexperienced male and inexperienced female hires was insignificant. I would hold that the finding is not clearly erroneous.

The only credible evidence that supports plaintiff's case is a single statistic. That statistic is the failure to place inexperienced women and the placement of inexperienced men in two laborer positions, four material handler positions, one slotter-trimmer position, and one wheelabrator position; a total of eight positions filled over four years. The Supreme Court has recognized that it may be error for a court to ignore the smallness of a sample in considering statistics. *Mayor v. Educational Equality League*, 415 U.S. 605, 621, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (1973) (The Supreme Court reversed the court of appeals for ignoring the district court's "well founded" concern for the validity of a thirteen person sample). *See also, Eubanks v. Pickens-Bond Construction Co.*, 24 F.E.P. cases 897, 900–904 (8th Cir. 1980).

Moreover, statistics do not exist in a vacuum. "[T]heir [statistics'] usefulness depends on all of the surrounding facts and circumstances." *Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 1856–57, 52 L.Ed.2d 396 (1976). There were significant other circumstances here which the District Court could properly consider in determining that this small number of placements did not make out a prima facie case. Under the bid procedures at Eaton each of these eight jobs were open to the members of plaintiff class, which consisted of present and former employees. No positions were filled by new hires unless the present employees failed to bid. The slotter-trimmer position as well as some of the laborer and material handler positions were in the same departments in which substantial number of females were employed so that they could bid on these jobs without losing seniority. They chose not to do so for reasons plaintiff has not explained.

Perhaps most important, there was no evidence and indeed no claim that any woman was ever refused employment as a laborer, material handler, slotter-trimmer, or wheelabrator. Nor was there a claim or evidence that any member of the class now or at any time wished to fill one of these

---

**2.** We are concerned here with the improper channeling of female employees into certain positions. The fact that female emlpoyees did not attempt in large numbers to bid out of those jobs is not relevant to the claim of improper channeling in initial placement.

jobs. Although plaintiff class complained of the initial job placement of inexperienced female employees as junior inspectors or machine tenders, it does not appear that it was complaining of the failure to place inexperienced females as material handlers or laborers. In the absence of a class member who now seeks or has ever sought to be a laborer or material handler or was prevented or discouraged from applying for such a job, what relief would the court afford? Would it order a female employee to transfer to one of these positions, something female employees could have done at the time the position was filled?

Moreover, there is at least some evidence that between 10/1/76 and 11/30/77 some laborer jobs and wheelabrator and degreaser jobs paid less than some machine tender or junior inspector positions (the jobs in which plaintiff class were employed); e. g., machine tender—$5.98; junior inspector—$5.89; general laborer—$4.88; wheelabrate and degrease—$5.00 (Defendant's Exhibit C). However, at an earlier date (sometime in 1975 or 1976 (Defendant's Exhibit N)) laborer's jobs paid 11 cents an hour more than machine tender and junior inspector. Thus, there is a question whether plaintiff class suffered any financial harm during the relevant period by occupying the machine tender and junior inspector positions. The appendix does not even resolve that question.

The Court is concerned that "[s]tatistical use of the small sample in the manner of the District Court would preclude a smaller employer from being liable for unlawful channeling because only the most egregious and flagrant violations would be reflected through analysis." However, an employee may establish a prima facie case without statistics. An employee, or applicant, need only prove that he or she belongs to a minority group, was qualified and did not receive a position which was open. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Had there been a class member who was refused one of these eight positions here she could have readily made a prima facie case. Nor is Eaton a small employer. The total number of employees in the instant case was sufficient to be statistically significant. It is only the failure to place women in the job of material handler and laborer which the District Court found not to be statistically significant.

In summary, there is no named or unnamed member of the class who seeks or has sought placement in one of these eight entry level positions and no evidence or claim that any class member was prevented from doing so. Indeed, there is no evidence at all relating to the qualifications or make-up of the pool of applicants when any of these positions were open. There is evidence that class members were given the opportunity to fill these positions by the bidding system but chose not to. In support of plaintiff's case there is only the naked statistic that no woman was hired to two positions as laborer, four positions as material handler, one position as slotter-trimmer and one position as wheelabrator in a four year period (an average of two positions per year). Thus, I would affirm the District Court's holding that the statistical evidence failed to make a prima facie case of discrimination in that respect. *Compare Franks v. Bowman Transportation Co.*, 424 U.S. 747, 755–756, 96 S.Ct. 1251, 1259–60, 47 L.Ed.2d 444 (1976).