**Miriam C. NAGEL, individually and on behalf of all other persons similarly situated**

v.

**AVON BOARD OF EDUCATION, John Shine, individually and as principal of Avon High School, G. Ernest Temple III, individually and as Chairman of the Avon Board of Education, Dr. Herbert Pandiscio, individually and as Superintendent of the Avon School System.**

Civ. No. H–78–557 (PCD).

United States District Court, D. Connecticut.

Oct. 27, 1983.

**4.** *See, e.g.,* fn. 3, *supra.*

Ruth H. Mantak, Barbara J. Ruhe, Hartford, Conn., for plaintiff.

Paul Orth, Hoppin, Carey & Powell, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

DORSEY, District Judge.

*Jurisdiction*

Plaintiff's complaint, as amended, states claims under Title IX of the National Education Amendments of 1972, 20 U.S.C. § 1681(a), and under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Jurisdiction is found. 28 U.S.C. § 1343. *See* 42 U.S.C. § 2000e–5.

*Question Presented*

Plaintiff alleges that her failure of appointment as Chairperson of the Science Department of the combined High and Middle Schools in the Avon School System was discriminatory as based on her sex. The court bifurcated the issues and tried only the issue of gender discrimination under both Title IX and 42 U.S.C. § 1983.

■ To establish a prima facie case plaintiff need prove only that (1) she is a member of the class subject to discrimination; (2) she was qualified for the appointment; (3) she was rejected; and (4) after her rejection the job remained open and available to others of her qualification. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A prima facie case of discrimination is found.

■ Defendants, however, have offered ample and credible evidence of a gender neutral appointment procedure and that the nonselection of the plaintiff was based on legitimate, nondiscriminatory grounds, thus rebutting the presumption of discrimination. Accordingly, the plaintiff was left with the burden of proving the ultimate question of discrimination vel non. *United States Postal Serv. v. Aikens,* — U.S. ——, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green, supra.* This process has been established as an orderly way to evaluate evidence in a case of claimed discrimination. *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

Plaintiff has not met her burden of proof of discrimination and accordingly, judgment should enter for all defendants.

*Factual Background*

Plaintiff, a teacher since 1962, came to the Avon School System in 1972. In 1976 a vacancy arose for the position of Chairperson of the Science Department for the High and Middle Schools in Avon. Defendant Pandiscio, the Superintendent of Schools, appointed a committee to make recommendations from among the candidates to the Board of Education. Seven candidates were interviewed by the committee consisting of all of the applicants from within the system, four in number, and three applicants from outside the system who had been prescreened from a larger group. Plaintiff was one of the inside applicants. She was the only female interviewed. The screening committee consisted of the High School Principal, the Middle School Principal, two science teachers, one from each school, the Assistant Superintendent for Business and the Chairman of the Special Services Department of the school system. The Middle School Science teacher was the

only female member of the committee. The committee recommended two names for consideration by the Board of Education, Mr. Malcolm Cheney, an outside applicant, and Mr. Eugene Bourquin, then a teacher in the Science Department at Avon High School. The Board of Education appointed Eugene Bourquin. Defendants have conceded plaintiff's high qualifications as a teacher and neither argued nor presented evidence to suggest her disqualification for the position of Department Chairperson.

■ In 1976, there was one female in a supervisory position within the Avon School System and, until shortly prior thereto, there had been a female Elementary School Principal whose position was terminated when the school in question was closed. Of the five High School Department Chairmenships, in 1976 none was held by a female nor had any of them been held by a female for at least eight years, during which three vacancies had occurred. There was no evidence of applications for any chairmenship vacancies by women other than the plaintiff and one other whose qualifications were not the subject of evidence. There was no evidence to suggest any continuity or relationship between the committee in this case and any of the procedures or personnel involved in the selection procedures for department chairmenships prior to 1976. Nonselection of women absent evidence of their having applied is not, of itself, sufficient to establish a prima facie case of discrimination. *Marsh v. Eaton Corp.*, 639 F.2d 328 (6th Cir.1981). The ratio of women to men teaching in the Avon School System was approximately 2 to 1 and, in 1976, within the Science Department, was 4 to 3.

The screening process established by Dr. Pandiscio was less than optimally calculated to obtain a full presentation of the qualifications of each candidate in the following respects:

(a) Application forms tailored to the specific position were not used.

(b) Job specifications were not published for the candidates nor for the screening committee though a previously adopted school board policy described the position and was generally known to most of the committee, all of whom had personal knowledge of the specific job.

(c) No specific presentation in writing, in the form of resumes, recommendations or references, writings and the like, was requested.

(d) Candidates were not informed, in advance, that they were to undergo a panel interview.

(e) Criteria on which to judge a candidate's ability to meet the job requirements, including subjective concepts, were not articulated until after selection was completed.[1]

(f) The interviews were abbreviated, probably taking in the range of thirty minutes.

(g) One of the committee was present for only a minor portion of the plaintiff's interview.

(h) No committee member was void of advance knowledge of all the candidates. None was insulated from relationships within the school system.

---

1. The criteria established for the position (Exhibit 71) were as follows:
    1. Outstanding prior experience as a teacher.
    2. High level of skill in science subjects.
    3. Ability to relate to other members of the staff.
    4. Ability to relate to students.
    5. Ability to supervise colleagues and bring out the best in them.
    6. Skill in developing programs across the entire spectrum of science subjects.
    7. Ability to assess all science programs.
    8. Ability to relate effectively with administrative personnel.
    9. Ability to prepare and manage detailed departmental budget.
    10. Ability to successfully interview and assess qualifications of candidates for science positions.
    11. Ability to develop and operate orientation and in-service programs for members of the science department.
    12. Others.

The items on which the committee members testified that they evaluated the plaintiff at lower grades than Messrs. Bourquin and Cheney were numbers 3, 5, 8, 10 and 11.

None of the deficiencies pertained solely nor more particularly to the plaintiff nor were they likely to produce any different evaluation of the plaintiff than of any other candidate. Thus, the selection process, though faulty, did not operate any differently in relation to the plaintiff than to the other candidates. She was not precluded from putting forth her full qualifications as there was no restriction on either her oral or written presentation. While the plaintiff might have been obliged to extend herself to make a better case, she was not restricted from doing so and was in no different posture before the screening committee than other candidate.

One of the committee, Mrs. Laurie-Ann Salva, was a Middle School Science Department teacher for two years as of 1976. She was untenured. The plaintiff claims that as the only female member of the selection committee, she was unable to insure a nondiscriminatory deliberative process. Mrs. Salva impressed the court as an intelligent, alert woman who seemingly was and would have been sensitive to the potential for discrimination. She described the procedure as being without any aspect or suggestion of discrimination against the plaintiff, both in interviews and in the committee's deliberation. None of the committee had any knowledge of Mr. Cheney other than from his application, written submission, the interview and the committee's deliberations. Four members of the committee had greater knowledge of Mr. Bourquin outside the interview process than they had of Mrs. Nagel. One member of the committee, the High School Principal, supervised both Mr. Bourquin and Mrs. Nagel, the latter for a longer time.

The committee members testified with the exception of Mr. Shack whose written evaluation was in evidence. Exhibit 71. The committee members testified that their decision was based on their knowledge of the candidates from personal experience, where applicable, from the material supplied by each candidate, and from the interview process, except that Mr. Penna was largely absent from Mrs. Nagel's interview. Each member of the committee considered the insight of the other members as expressed in the deliberation.

The plaintiff had fourteen years in teaching. She had some experience supervising student teachers. She had developed curriculum in at least three projects. Her evaluations within the Avon School System were extremely good. She had acted as a Teacher Representative. She was described as having excellent rapport with her students. She had both bachelors and masters degrees and had done advance work. She had participated in an Appointment Advisory Committee within the Avon System. She was teacher-qualified in four subjects. She offered credible evidence of her qualification under the subjective criteria used by the committee.

Mr. Bourquin had been a teacher for five years as of 1976. He had developed curriculum in at least two projects. His teacher evaluations were extremely good. He undertook substantial extracurricular supervision of and participation in student activities and appeared to have excellent rapport with his students. He acted as a Teacher Representative both on a voluntary and elected basis. He had bachelors and masters degrees. He was teacher qualified in three subjects. He had supervised student teachers. He had served on a School Appointment Advisory Committee. His bachelors degree was obtained cum laude.

Malcolm Cheney had been a teacher for ten years. He had bachelors and masters degrees and additional credits for work beyond those degree programs. He had chaired departments in two schools for a total of six years (commencing in his fifth year of teaching). He had supervised various programs outside school systems. He had developed curriculum in one project. No evidence was offered as to his interview nor his grading in comparison with either the plaintiff or Mr. Bourquin.

While several witnesses testified to the plaintiff's qualifications, there was no testimony to suggest that either Messrs. Bourquin or Cheney was any less qualified.

The committee, including Mrs. Salva, voted to recommend Messrs. Bourquin and Cheney unanimously. The committee members testified that they graded Mr. Bourquin, and Mr. Cheney, higher than the plaintiff in as many as five of the eleven criteria subsequently articulated. Exhibit 71. The individual evaluations did not constitute a uniform pattern among the committee. They were prepared separately and without consultation among the committee members, for submission to the Department of Health, Education and Welfare (HEW), to which plaintiff had complained. The committee's evaluations appeared to be based on genuinely and sincerely held views and constituted reasonable, fair and logical judgments in which the plaintiff was graded lower particularly in personal relations. A morale problem existed in the Science Department in 1976. This suggested to a number of the committee that the next chairperson need have real strength in the criteria in which the plaintiff was evaluated lower than was Mr. Bourquin. The same general observations were made by the committee members in comparing the plaintiff with Mr. Cheney. The screening committee appropriately included representatives of interested organizational and functional segments of the school system. There was no evidence of any gender bias on the part of any member of the committee toward the plaintiff either within the selection process or at any other time. The committee appeared to approach and perform their duties in an unbiased, objective, independent, professional manner, seeking the best candidate based upon professional qualifications.

Plaintiff suggests that her interests, as an experienced woman teacher, were not represented on the male dominated committee. Plaintiff cites no authority for the proposition that an applicant is entitled to "representation" within such a committee. There was no evidence that Mrs. Salva was insensitive to the discrimination question. There was no evidence that any particular characteristic was essential for the fair evaluation of the qualifications of the plaintiff. There was no maximum nor minimum number of recommendations to be made by the committee to the Board of Education. The absence of any comment or statement of preference among the candidates by the administration suggests that the decision was left entirely to the committee. The position of Chairperson necessarily involves intangibles such as leadership, the ability to relate to others, organizational and motivational ability and other aspects of human relations. The committee found the plaintiff to be outstanding in some respects and indeed equal to Mr. Bourquin in some aspects, but overall her evaluation was lower in several specified categories than either of the two men recommended.

The plaintiff's complaint to HEW resulted in a report which found discrimination largely on the basis of inferences drawn from the absence of women appointees to supervisory positions. It further rejected the criteria which were articulated for the selection process. The HEW investigation did not extend to the gender-neutral make-up and procedure of the committee. It did not conduct personal interviews of the committee members. The evaluations of the committee were rejected by HEW although it ultimately characterized the plaintiff's qualifications as "equal" to those of the two persons recommended by the committee. *See* Exhibit 71, the letter of HEW dated January 13, 1978. The HEW report was characterized as not supportive of further proceedings by that department.

While the plaintiff's evidence, including her exhibits, clearly demonstrated her excellence as a teacher, the pertinent subjective criteria for leadership capacity necessitated the judgment of the screening committee. Their evaluations were not synchronized but were consistent in pattern.

## CONCLUSION

Plaintiff had the burden of proving pretext in the grounds of the decision or intentional discrimination, i.e. rejection of her candidacy on the basis of her gender. *Cannon v. University of Chicago*, 648 F.2d 1104, 1109 (7th Cir.), *petition for writ*

*of mandamus denied,* 454 U.S. 811, 102 S.Ct. 373, 70 L.Ed.2d 197, *cert. denied,* 454 U.S. 1128, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981). There was no evidence that policies were promulgated or followed by the defendants nor that the procedures used would have a disparate effect on women generally. The statistical disparity of prior promotion processes, while not necessarily demonstrative of gender discrimination, as striking enough and existent for a sufficiently long period, has been considered in assessing plaintiff's proof of a prima facie case. *Sweeney v. Board of Trustees of Keene State College,* 604 F.2d 106, 113 (1st Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980); *Rivera v. City of Wichita Falls,* 665 F.2d 531, 534–535 (5th Cir.1982). The defendants' evidence demonstrated a gender-blind committee's reliance on a legitimate, nondiscriminatory basis why plaintiff was not recommended by the screening committee for consideration by the Board of Education, i.e. that she was less qualified than the two persons recommended. *See Verniero v. Air Force Academy School Dist. No. 20,* 705 F.2d 388 (10 Cir.1983). Thus the burden reverts to the plaintiff. Plaintiff's argument that disparate impact suffices to fulfill her final burden, derived from the resolution of Title VI claims in *NAACP v. Medical Center, Inc.,* 657 F.2d 1322 (3d Cir.1981), and the split rationale of *Guardians Association v. Civil Serv. Comm'n,* —— U.S. ——, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), is unpersuasive in that plaintiff's Title IX and § 1983 case is one of discrimination against her and not one of the impact of procedures or policies applied to a class, or group, as was the case in *NAACP* and *Guardians.* That women had not previously been selected for departmental chairs, that plaintiff is a woman qualified for the appointment, her nonselection and the recommendation of two males and the appointment of one, while sufficient to create an inference of discrimination and the obligation of defendants to offer evidence to rebut it, *McDonnell Douglas Corp. v. Green, supra* 411 U.S. at 802, 93 S.Ct. at 1824; *EEOC v. Ball Corp.,* 661 F.2d 531 (6th Cir.1981), are not enough to prove intentional discrimination. *See Board of Regents v. Bakke,* 438 U.S. 265, 287, 98 S.Ct. 2733, 2746, 57 L.Ed.2d 750 (1978); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Cannon v. University of Chicago, supra.*

Defendants' evidence is to be judged in the circumstance of a decision making process that was not merely determinative of plaintiff's qualifications, but rather sought the highest qualified candidate and thus weighed the plaintiff's qualifications in comparison to those of the other candidates. *See Hereford v. Huntsville Board of Educ.,* 574 F.2d 268, 273 (5th Cir.1978); *Gillian v. Federal Paperboard Co.,* 479 F.2d 97 (2d Cir.1973); *Olson v. Philco Ford,* 531 F.2d 474 (10th Cir.1976); *Valentino v. United States Postal Serv.,* 674 F.2d 56 (D.C.Cir.1982).

The committee members' credible expression of their judgment, corroborated by Mr. Shack's written evaluation, Exhibit 7, were credible assessments of the prospects of success in a role none of the candidates, except Mr. Cheney, had previously experienced. The use of subjective criteria is not preclusive of a finding that judgments have been made on other than discriminatory bases. *Faro v. New York Univ.,* 502 F.2d 1229, 1232 (2d Cir.1974); *Hereford v. Huntsville Board of Educ., supra* at 270; *Knutson v. Boeing Co.,* 655 F.2d 999 (9th Cir.1981).

> "When a decision to … promote … one person rather than another is reasonably attributable to a honest even though partially subjective evaluation of their qualifications, no inference of discrimination can be drawn." *Lieberman v. Gant,* 630 F.2d 60, 67 (2d Cir.1980).

Subjective criteria can be a screen for discriminatory motivation. Subjective criteria do not provide as definitive a comparison as objective standards. *See Harris v. Birmingham Board of Educ.,* 712 F.2d 1377, 1383 (11th Cir.1983). The court is mindful that reliance on subjective criteria can easi-

ly screen discrimination. The finding of a nondiscriminatory decision by the committee is based on their testimony, their appearance and the sincerity of their expression of their evaluation of the plaintiff's qualifications.

 The morale of the Science Department dictated the need for firm leadership. The recommendations of the committee were based on their best judgment as to who could provide that leadership. That was a rational judgment on relevant grounds, credibly articulated. *See Lieberman v. Gant,* 474 F.Supp. 848, 865 (D.C. Conn.1979), *aff'd,* 630 F.2d 60 (2d Cir.1980). At most, the plaintiff has proven that she was at least as qualified in some respects as were the committees' recommendations. Neither the plaintiff's membership in the suspect class nor her suspicions of influence, control and discriminatory motives within the committee, can sustain her burden of proof in the face of the defendants' credible evidence of a legitimate, nondiscriminative reason for her nonselection, *Sweeney v. Board of Trustees of Keene State College, supra; Furnco Const. Corp. v. Waters, supra* 438 U.S. at 578, 98 S.Ct. at 2950, absent proof of the committee's reasons being mere pretext and/or absent proof of intentional discrimination. *See United States Postal Serv. v. Aikins, supra* 103 S.Ct. at 1481; *Mortenson v. Callaway,* 672 F.2d 822 (10th Cir.1982). The plaintiff's nonselection would appear to have been nondiscriminatory and no more can be required of the defendants. *Powell v. Syracuse Univ.,* 580 F.2d 1150, 1156–57 (2d Cir.1978), *cert. denied,* 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1979). She has not sustained her burden of proof of either a pretextual sex-neutral selection or her nonselection on the basis of gender, i.e. intentional discrimination. *See Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361 (7th Cir.1983).

As plaintiff has failed to prove either pretext in her nonselection or intentional discrimination her claim necessarily fails. *Grigsby v. North Mississippi Medical Center, Inc.,* 586 F.2d 457 (5th Cir.1978), *Haire v. Calloway,* 434 F.Supp. 1140 (E.D.Mo.),

*aff'd,* 572 F.2d 632 (8th Cir.1977); *Pack v. Energy Research & Dev. Admin.,* 566 F.2d 1111 (9th Cir.1977); *Miller v. Williams,* 590 F.2d 317 (9th Cir.1979); *Causey v. Ford Motor Co.,* 516 F.2d 416 (5th Cir. 1975); *Blizard v. Fielding,* 572 F.2d 13 (1st Cir.1978), *on remand,* 454 F.Supp. 318 (D.Mass.1978), *aff'd sub nom. Blizard v. Frechette,* 601 F.2d 1217 (1st Cir.1979); *James v. Newspaper Agency Corp.,* 591 F.2d 579, 583 (10th Cir.1979); *Boyd v. Madison Cty. Mut. Ins. Co.,* 653 F.2d 1173, 1178 (7th Cir.1981), *cert. denied,* 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 299 (1982); *Jackson v. City of Killeen,* 654 F.2d 1181, 1186 (5th Cir.1981).

As plaintiff has not met her burden of proof, judgment shall enter for defendants.

SO ORDERED.